Richard C. Johnson (SBN 40881)
djohnson@sjlawcorp.com
Anne M. Bevington (SBN 111320)
abevington@sjlawcorp.com
Shivani Nanda (SBN 253891)
snanda@sjlawcorp.com
SALTZMAN & JOHNSON LAW CORPORATION
44 Montgomery Street, Suite 2110
San Francisco, CA 94104
Telephone: (415) 882-7900
Facsimile: (415) 882-9287

Attorneys for Plaintiffs BAY AREA ROOFERS
HEALTH AND WELFARE TRUST, et al.

Sean P. Nalty (SBN 121253)
sean.nalty@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA 94105
Telephone: 415.442.4810
Facsimile: 415.442.4870

Attorneys for Defendant
SUN LIFE ASSURANCE COMPANY OF CANADA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BAY AREA ROOFERS HEALTH AND WELFARE TRUST, its JOINT BOARD OF TRUSTEES, and KEITH ROBNETT and BRUCE LAU, as Trustees<br><br>    Plaintiffs,<br>            v.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA, and DOES 1-10, inclusive,<br><br>    Defendant. | Case No.:  C 13-04192 WHO<br><br>**JOINT CASE MANAGEMENT STATEMENT; JOINT REQUEST TO CONTINUE CASE MANAGEMENT CONFERENCE TO COINCIDE WITH MOTION HEARING DATE; ORDER CONTINUING CASE MANAGEMENT CONFERENCE**<br><br>Date:        December 20, 2013<br>Time:        2:00 p.m.<br>Courtroom  9, 19th Floor<br>Judge:       Hon. William H. Orrick<br><br>Complaint filed: September 10, 2013 |

- 1 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
**Case No.: C 13-04192 WHO**

**REQUEST TO CONTINUE CASE MANAGEMENT CONFERENCE TO COINCIDE WITH MOTION HEARING DATE**

Plaintiffs Bay Area Roofers Health and Welfare Trust, its Joint Board of Trustees, and Keith Robnett and Bruce Lau as Trustees (collectively the "Trust Fund") and Defendant Sun Life Assurance Company of Canada ("Sun Life of Canada"), jointly request that the Court continue the initial case management conference, currently set for December 10 at 2:00 p.m., to coincide with the hearing on plaintiffs' Motion to Strike Defendant Sun Life Assurance Company of Canada's Defenses, which is set for December 18, 2014, at 2:00 p.m.

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

The parties submit this Joint Case Management Conference Statement in accordance with Rule 26 of the Federal Rules of Civil Procedure and Local Rule 16-9, following the Conference of Counsel that occurred on November 26, 2013.

I.   Jurisdiction and Service

This court has original jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1332.  There are no parties that remain to be served.

II.   Facts

   A.   Plaintiffs' Statement of the Case

The Trust Fund provides health care benefits for employees and their dependents covered by collective bargaining agreements in the roofing industry in the San Francisco Bay Area. To provide those benefits, the Joint Board of Trustees established a self-funded, multiemployer health and welfare plan ("the Plan"), governed by ERISA.

In establishing the Plan, the Joint Board of Trustees recognized a need to indemnify the Trust against potentially large health claims, so it purchased stop loss insurance coverage from Sun Life of Canada. For the relevant policy period, the stop loss policy obligated Sun Life of Canada to reimburse the Trust Fund for payments made on health claims beyond a $150,000 deductible.

- 2 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
**Case No.: C 13-04192 WHO**
G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx

The Trust Fund and Sun Life of Canada agreed that the Joint Board of Trustees was responsible for making benefit determinations under the Plan and that Sun Life of Canada had no duty or authority to administer, settle, adjust or provide advice regarding claims. Instead, the authority to determine all questions relating to eligibility for benefits and to construe the terms of the Plan was fully vested with the Joint Board of Trustees.

As the stop loss policy issued by Sun Life of Canada was a "reimbursement policy," coverage was promised in exchange for payment of premiums by the Trust Fund calculated solely based on a head count of the total number of persons eligible for health care benefits under the Plan. Sun Life of Canada never required Plaintiffs to submit the names and/or social security numbers of employees for whom Plaintiffs were remitting premiums.

In November 2011, Plaintiffs submitted claims for reimbursement under the Sun Life of Canada stop loss policy for the amount the Trust paid above the $150,000 deductible for medical treatment received by two prematurely born twin babies that were enrolled in the Plan. The babies' father, a roofing employee who was enrolled as a Plan participant, is referred to in the Complaint as Participant X. In total, the Trust paid $256,178.29 for Twin A's medical treatment and $452,663.29 for Twin B's medical treatment.

In December 2011, Sun Life of Canada wrongfully denied Plaintiffs' claims. Based solely on a social security no-match response from the Social Security Administration as to Participant X's social security number, Sun Life of Canada claimed that Participant X was not an "Employee" within the meaning of the Plan, and therefore, the Plan was not entitled to reimbursement of amounts paid for Twin A's and Twin B's medical treatment.

Plaintiffs appealed Sun Life of Canada's wrongful claim denial because the policy entitled the Trust to reimbursement for the amounts it already had paid for the twins' medical care and there was no specific policy exclusion for claims paid by the Trust on behalf of an employee whose social security number generates a no match response from the Social Security Administration.

On appeal, Sun Life of Canada notified Plaintiffs that "as a matter of procedure" it checks

- 3 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
Case No.: C 13-04192 WHO

G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx

the Social Security Numbers listed for all Stop Loss claimants through a program called Accurint after it receives a new claim submission. This was the first notice of any kind that the Board of Trustees, as the policyholder, and the Plan, as the insured, received from Sun Life of Canada that coverage under the Policy was conditioned upon a social security match through the Accurint program. At no point during the initial underwriting process, nor through Policy renewals, did Sun Life of Canada inform Plaintiffs that a social security match through Accurint was a condition precedent to coverage. Thereafter, Sun Life of Canada denied the Plan's appeal and confirmed denial of coverage. Sun Life of Canada will not meet its burden to prove that there was any policy exclusion based on a Plan participant's immigration status.

On September 10, 2013, Plaintiffs sued Sun Life of Canada in this Court seeking monetary relief, declaratory relief, and to enjoin Sun Life of Canada's unfair business practices.

B.  Sun Life's Statement of the Case

Sun Life disagrees with Plaintiff's Statement of the Case.  It is true that Sun Life issued a policy of Stop-Loss insurance to the Trust ("the Stop-Loss Policy"). The Stop-Loss Policy provides coverage for certain eligible expenses paid by the Trust on behalf of employees, who obtained coverage under the Trust's Plan by virtue of employment with a participating employer. If one is not lawfully authorized to work in the United States, then one cannot be considered to be a lawful employee under the Plan or Sun Life's Stop Loss Policy.

It is not true that the Trust and Sun Life "agreed that the authority to determine all questions relating to eligibility for benefits and to construe the terms of the Plan was fully vested with the Joint Board of Trustees", for purposes of the Stop-Loss Policy, as the Trust seems to contend.  This is not a situation where the Plan was expressly incorporated into the Stop-Loss Policy.  To the contrary, the Stop-Loss Policy specifically provides Sun Life with the right to determine whether an expense was paid in accordance with the terms of the Plan  ("For the purpose of determining Eligible Expenses under the Policy, We have the right to determine whether an Eligible Expense was paid by you in accordance with the terms of your Plan."); ("We have the right to require documentation from You that demonstrates You paid an Eligible Expense

- 4 -

and that payment was made in accordance with the terms of your Plan.").

It is true that the Trust submitted a claim to Sun Life in early November 2011, in connection with a worker on whose behalf the Trustees had paid medical expenses under the Plan. It is not true that Sun Life denied the claim and upheld the denial "[b]ased solely on a social security no-match response from the Social Security Administration. . ." as the Trust contends. To the contrary, upon receipt of the claim Sun Life attempted to verify the SSN listed for Participant X, and the resulting report showed that the SSN provided belongs to a person other than Participant X. Thus, upon initial review, the evidence indicated that the expenses had been paid on behalf of an employee who had not used a Social Security Number ("SSN") that validly belonged to him, and was therefore not lawfully working in the U.S. Nonetheless, Sun Life gave the Trust every opportunity to provide additional information, affording it two separate appeals of Sun Life's determination and offering to review any information submitted by the Trust. With respect to both the first and second appeals, the Trust made no attempt to show that Participant X was lawfully working in the U.S. Moreover, as part of its review on appeal, Sun Life verified with the Social Security Administration ("SSA") that the SSN used by Participant X did not belong to him.

The burden under the Stop-Loss Policy is upon the Trust to prove that its claim falls within coverage of the Stop-Loss Policy. Sun Life asked the Trust repeatedly for information of Participant X's lawful employment status. When none was provided, Sun Life ultimately obtained verification from the SSA that the Social Security Number used by Participant X was not his SSN. Only by using a SSN that did not belong to him, could Participant X secure the employment upon which his alleged entitlement to benefits under the Plan is based. As an unlawful employee, Participant X could not be considered a "Covered Person" under the Stop-Loss Policy. As such, Sun Life upheld its determination.

III. Legal Issues

Plaintiffs contend that the legal issues include whether Sun Life of Canada breached its duties under the stop loss policy issued to the Trust Fund, whether it denied of the Trust Fund's

- 5 -

reimbursement claims in bad faith, and whether Sun Life of Canada's practice of denying reimbursement claims based on a social security number Accurint search of Plan participants when there is no such condition precedent or exclusion in the stop loss policy violates Business and Professions Code Section 17200 *et seq*. In addition, as Defendant's claim denial was premised on the definition of Employee within the meaning of the Plan, as well as the Plan's eligibility terms, there is a legal issue whether an employee's eligibility for Plan benefits is affected by the employee's immigration status. Plaintiffs, as plan fiduciaries, construe the Plan as requiring that benefits be provided to participants who meet the eligibility requirements set forth in the Plan regardless of their immigration status, and Plaintiffs therefore seek declaratory relief under ERISA Section 502(a)(3) to enforce the terms of the Plan.

Sun Life states that the legal issue as properly framed is whether Participant X, as an unauthorized worker, could be considered a "Covered Person" under the Stop-Loss Policy. Sun Life contends that he could not. *See Garcia v. American United Life Insurance Company*, 2009 WL 6327459 (E.D. Texas December 9, 2009)(Report and Recommendation), adopted by 2010 WL 1379106 (E.D. Texas March 31, 2010), affirmed on appeal, 422 Fed. Appx. 306 (5th Cir. 2011)(worker who was not authorized to work in the United States, could not lawfully meet the policy's definition of "Employee," and was therefore ineligible for coverage). No insured would reasonably expect that a worker not legally authorized to enter into an employment relationship, who procures such a relationship through the fraudulent submission of someone else's SSN, is nonetheless entitled to the purely contractual benefits dependent upon the existence of such an employment relationship.

Moreover, Plaintiff's cannot seek relief under ERISA Section 502(a)(3) because the Stop-Loss Policy is not governed by ERISA, because Plaintiffs are neither beneficiaries nor participants with standing to sue under Section 502(a)(3) and because Sun Life is not a "fiduciary" subject to suit under Section 502(a)(3), as specifically stated in the Stop-Loss Policy. Plaintiffs are also incorrect in arguing that their alleged interpretation of the Plan is entitled to deference in this suit regarding coverage under the Stop-Loss Policy, because the Plan is not incorporated into the Stop-

- 6 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
**Case No.: C 13-04192 WHO**
G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx

Loss Policy and because the Stop-Loss Policy specifically provides Sun Life with the right to determine whether an expense was paid in accordance with the terms of the Plan.  The Trustees may choose to pay an expense under the Plan, but that does not mean the expense is reimbursable under the Stop-Loss policy.

Finally the central issue in this matter is whether the claims at issue are covered under the Stop-Loss Policy.  Even if it is assumed that the coverage question is decided in favor of plaintiffs, there still is no evidence that Sun Life acted in bad faith in making its claim decision.

IV.   Motions

The Trust Fund's motion to strike Sun Life of Canada's defenses, and Sun Life's responding motion for leave to file a first amended answer, are pending, having been scheduled for a hearing on December 18, 2013. The parties anticipate filing dispositive motions, and may also file motions for partial summary judgment in an attempt to narrow the issues for trial.  The parties anticipate that there may be discovery motions as well.

V.   Amendment of the Pleadings

Plaintiffs do not currently anticipate amending the complaint but reserve the right to do so if additional parties or claims are discovered. Defendant is requesting leave to file an amended answer in response to plaintiffs' pending motion to strike defenses.

VI.   Evidence Preservation

The parties are taking necessary steps to preserve evidence relevant to the issues reasonably evident in this matter, including electronic information.

VII.   Disclosures

The parties have not made any initial disclosures required by Rule 26(a).  The parties intend to exchange Rule 26(a) disclosures as provided by Rule 26, by December 5, 2013.

VIII.   Discovery

To date, there has been no discovery conducted in this matter.  The parties provide the following discovery plan in accordance with Fed. R. Civ. P. 26(f):

Rule 26(f) Disclosures (Fed. R. Civ. P. 26(f)(2)(A)):  At the time of this filing, the parties

- 7 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
**Case No.: C 13-04192 WHO**
G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx

1  do not believe that any changes to the timing, form, or requirement for disclosures under Rule
2  26(a) should be made.  The parties will serve their respective initial disclosures by December5,
3  2013.  The parties shall supplement their disclosures as required.

4  <u>Subjects on Which Discovery May be Needed</u> (Fed. R. Civ. P. 26(f)(2)(B)):  The parties
5  anticipate that discovery will be conducted regarding the factual basis of the claims and the factual
6  basis of the Defendants' denials and affirmative defenses.  The parties anticipate that discovery
7  will be completed within the time specified herein.  The parties do not believe that discovery
8  should be conducted in phases.  At this time, the parties do not currently anticipate the need for
9  any orders under Rule 26 or 29-37 of the Federal Rules of Civil Procedure.

10  <u>E-Discovery</u> (Fed. R. Civ. P. 26(f)(2)(C)):    The parties hereby certify that they have
11  reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and
12  confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable
13  and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this
14  action.  The parties have had preliminary discussions regarding the process for efficiently and
15  economically engaging in the discovery of ESI.  As an initial step, Plaintiffs are preparing a letter
16  to Defendant requesting certain foundational information, such as descriptions of Defendant's
17  computer systems and software programs, identification of key custodians, and location of ESI.
18  Plaintiffs anticipate that the parties will submit a proposed order to the Court incorporating the
19  parties' agreement on an Electronic Discovery Protocol.  As discussed during the meet and confer
20  process, defendant contends that the only ESI discoverable in this matter is that pertaining to the
21  claim under the Stop Loss Policy that is the subject of this action.  Defendant is not in agreement
22  that plaintiffs are entitled to foundational information that is not related to the production of the
23  claim file in this matter.  Consistent with the Guidelines for the Discovery of Electronically Stored
24  Information, defendant will try to resolve all issues informally with counsel for plaintiffs.

25  <u>Claims of Privilege or of Protection</u> (Fed. R. Civ. P. 26(f)(2)(D)):  Plaintiffs anticipate that
26  they will seek documents and/or information that contains trade secrets or other confidential or
27  private information related to Defendant's business practices, employees, and/or policyholders.

- 8 -

28
**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
**Case No.: C 13-04192 WHO**

The parties agree to negotiate in good faith as to a stipulated Protective Order; but, if they are unable to agree, will submit proposed Orders to the Court for resolution.  Defendant contends that information concerning other policyholders is not discoverable.

Plaintiffs provided a draft Protective Order to Defendant on November 26, 2013, and request that the parties agree to a final draft before the December 10, 2013 Case Management Conference or submit alternative proposals to the Court at that time.  A copy of Plaintiffs' draft Protective Order is attached as Exhibit "A."

Changes to Limitations on Discovery (Fed. R. Civ. P. 26(f)(2)(E)):  The parties request no changes to be made to the limitations on discovery at this time.

Other Orders (Fed. R. Civ. P. 26(f)(2)(F)):  The parties are currently unaware of the need for any such orders.

IX. Class Actions

Not applicable.

X. Related Cases

There are no related cases pending in any state or federal court at this time.

XI. Relief

Plaintiffs seek compensatory and punitive damages, declaratory relief, and to enjoin Defendant's unfair business practices. The compensatory damages consist of $408,851.58 in reimbursable expenses paid by the Trust Fund on behalf of Twin A and Twin B, in excess of the stop loss policy's deductible, plus interest at 10%, reasonable attorneys' fees and costs of the litigation.  Defendant does not seek any affirmative relief at this time.

XII. Settlement and ADR

The parties are interested in participating in ADR. Plaintiffs proposed court-sponsored mediation. Defendant would agree only to private mediation.  Plaintiffs are agreeable to private mediation only if Defendant pays for it.  The parties are also discussing a possible early settlement conference with a Magistrate Judge or District Judge. The parties anticipate filing a Notice of Need for ADR Phone Conference.

- 9 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
Case No.: C 13-04192 WHO
G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx

XIII. **Consent to Magistrate Judge for All Purposes**

Not applicable.

XIV. **Other References**

At this time, the parties do not see the need and thus do not consent to a reference for binding arbitration, a special master, or the Judicial Panel MDL.

XV. **Narrowing of the Issues**

Plaintiffs have not yet determined the complete extent to which issues can be narrowed, as the pleadings have not yet been settled. However, plaintiffs expect that they may bring motions for partial summary judgment to narrow the issues for trial. Plaintiffs expect to bring early partial summary judgment motions on their First Claim for Relief to enforce the provisions of the Plan under ERISA and their Second Claim for Relief for breach of contract. These claims turn on legal issues that can appropriately be decided early in the case. Plaintiffs' Third and Fourth Claims for Relief – for breach of the implied covenant of good faith and fair dealing and for violation of California Business & Professions Code Section 17200 – do not depend on the outcome of these motions. Accordingly, plaintiffs intend to commence discovery pursuant to Rule 26 and do not agree to delay discovery until after the partial summary judgment motions are decided.

Defendant contends that this matter involves a coverage question based on facts that are not in dispute. Resolution of the coverage question will narrow the issues in this matter. Therefore, defendant purposes the following:

1. Complete court sponsored mediation within 90 days.
2. Submit the coverage issue in this matter to the Court for decision.
3. Once the coverage issue is decided, conduct discovery on whatever claims and issues are left in this matter in the normal course.

XVI. **Expedited Schedule**

The parties do not believe an expedited schedule is appropriate in this case.

XVII. **Scheduling**

- 10 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
Case No.: C 13-04192 WHO

G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx

1  The parties have not agreed on a schedule, as plaintiffs have proposed a schedule that will permit them sufficient time to conduct discovery and determine whether there are additional parties and/or claims that should be added, while defendants have proposed a truncated schedule that would preclude plaintiffs from having sufficient time to do so. Plaintiffs propose the following schedule:

| | |
|---|---|
| ADR session to be held by: | 90 days after ADR Order |
| Further Case Management Conference (Tues 2:00 p.m.): | April 29 2014 |
| Deadline to add additional parties or claims: | December 20, 2014 |
| Completion of Fact Discovery: | February 6, 2015 |
| Disclosure of identities and reports of expert witnesses: | February 6, 2015 |
| Rebuttal expert disclosure: | March 9, 2015 |
| Completion of Expert Discovery: | March 31, 2015 |
| Last day to hear dispositive motions (Wed 2:00 p.m.): | June 3, 2015 |
| Final Pretrial Conference (Mon 2:00 p.m.): | August 3, 2015 |
| Trial date (2 week jury trial): | August 17, 2015 |

Defendants propose the following schedule:

| | |
|---|---|
| ADR session to be held by: | 90 days after ADR Order |
| Briefing Schedule to Determine Coverage Issue | |
| Deadline to add additional parties or claims: | February 20, 2014 |
| Completion of Fact Discovery: | October, 10, 2014 |
| Disclosure of identities and reports of expert witnesses by plaintiff: | November 1, 2014 |
| Disclosure of identities and reports of expert witnesses by defendant: | November 21, 2014 |
| Rebuttal expert disclosure: | December 12, 2014 |
| Completion of Expert Discovery: | December 30, 2014 |
| Last day to hear dispositive motions (Wed 2:00 p.m.): | January 28, 2015 |
| Final Pretrial Conference (Mon 2:00 p.m.): | February 16, 2015 |
| Trial date (7 court days): | March 2, 2015 |

- 11 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
Case No.: C 13-04192 WHO
G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx

The parties respectfully reserve the right to seek modification of the above-proposed schedule as this action develops.

XVIII. <u>Trial</u>

A jury demand has been timely made by Plaintiffs. The parties anticipate a two week trial.

XIX. <u>Disclosure of Non-Party Interested Entities or Persons</u>

Pursuant to Civil Local Rule 3-16, plaintiffs filed their Certification (Dkt. # 3) on September 10, 2013.

Plaintiffs certify that participants in the plaintiff Trust Fund, who are too numerous to list, are interested persons who could have a financial interest in the subject matter in controversy. Sun Life Assurance Company of Canada's direct and ultimate corporate parent is Sun Life Financial Inc. Sun Life Financial Inc., a publicly held corporation, owns 10% or more of the stock of Sun Life Assurance Company of Canada.

XX. <u>Other Matters</u>

The parties have no other case management matters to bring to the Court's attention at this time.

Dated: December 3, 2013              SALTZMAN & JOHNSON
                                     LAW CORPORATION


                                     By:  /s/ Anne M. Bevington
                                          Richard C. Johnson
                                          Anne M. Bevington
                                          Shivani Nanda
                                          Attorneys for Plaintiffs


Dated: December 3, 2013              OGLETREE, DEAKINS, NASH,
                                     SMOAK & STEWART, P.C.


                                     By:  /s/ Sean P. Nalty
                                          Sean P. Nalty
                                          Attorneys for Defendant

- 12 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
**Case No.: C 13-04192 WHO**
G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx

CERTIFICATION RE SIGNATURES

I attest that concurrence in the filing of this document has been obtained from each of the other Signatories.

Dated:  December 3, 2013.                    /s/ Anne M. Bevington
                                             ANNE M. BEVINGTON

///

///

///

///

///

- 13 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
**Case No.: C 13-04192 WHO**
G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx

**ORDER**

At the parties' joint request, the Case Management Conference previously set for December 10, 2013, is continued to December 18, 2013, at 2:00 p.m., to coincide with the scheduled motion hearing date.

IT IS SO ORDERED.

Dated: December 4, 2013

_____
HONORABLE WILLIAM H. ORRICK
UNITED STATES DISTRICT JUDGE

- 13 -

**JOINT CMC STMT, JOINT REQ TO CONTINUE CMC, ORDER**
**Case No.: C 13-04192 WHO**
G:\WHOALL\_CV\2013\2013_04192_Bay_Area_Roofers_Health_and_Welfare_Trust_v_Sun_Life_Assurance_Company_of_Canada\13-cv-04192-WHO-Proposed_Order_to_Continue_CMC.docx