Richard C. Johnson (SBN 40881)
djohnson@sjlawcorp.com
Anne M. Bevington (SBN 111320)
abevington@sjlawcorp.com
Shivani Nanda (SBN 253891)
snanda@sjlawcorp.com
SALTZMAN & JOHNSON LAW CORPORATION
44 Montgomery Street, Suite 2110
San Francisco, CA 94104
Telephone: (415) 882-7900
Facsimile: (415) 882-9287

Attorneys for Plaintiffs BAY AREA ROOFERS
HEALTH AND WELFARE TRUST, et al.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BAY AREA ROOFERS HEALTH AND WELFARE TRUST, its JOINT BOARD OF TRUSTEES, and KEITH ROBNETT and BRUCE LAU, as Trustees<br><br>　　Plaintiffs,<br>　　　　v.<br>SUN LIFE ASSURANCE COMPANY OF CANADA, and DOES 1-10, inclusive,<br>　　Defendant. | Case No.:  C 13-04192 BLF<br><br>**PLAINTIFFS' RESPONSIVE SEPARATE STATEMENT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　　　August 7, 2014<br>Time:　　　　9:00 a.m.<br>Location:　　Courtroom 3, 5th Floor<br><br>Complaint Filed: September 10, 2013<br>Trial Date:　　Not Set<br>Judge:　　　　Hon. Beth Labson Freeman |

Pursuant to District Judge Beth Labson Freeman's Standing Order Re Civil Case, plaintiffs hereby submit the following Responsive Separate Statement in opposition to defendant Sun Life Assurance Company of Canada's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, as follows:

| Issue No. | Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| Issues 2 through 5. | Fact 1: The Bay Area Roofers Health & Welfare Benefits Trust ("the Trust") applied to Sun Life for Stop-Loss coverage pursuant to an application dated July 23, 2009.<br><br>Affidavit of Laura Rollinson ("Rollinson Aff."), ¶ 2 & Ex. A. | It is undisputed that the Trust applied to Sun Life for Stop-Loss coverage pursuant to an application dated July 23, 2009.  The Trust disputes that Exhibit A to the Rollinson Affidavit is a true copy of the Trust's application, in that the unnumbered fourth and fifth pages of Exhibit A relate to an application by a different insured for a different policy period.<br><br>Rollinson Aff., Ex. A, pages 4-5. |
| Issues 2 through 5. | Fact 2: The Stop-Loss Policy issued with an effective date of August 1, 2009<br><br>*Id*. at ¶ 3 & Ex. B. | Undisputed. |
| Issues 2 through 5. | Fact 3: Following Sun Life's approval of the Trust's application, the Trust provided Sun Life with a copy of its Plan Document ("the Plan").<br><br>*Id*. at  ¶ 3 & Ex. C. | It is undisputed that the Trust provided Sun Life with a copy of its Plan Document.  It is disputed that this was done after Sun Life approved the Trust's application.  The Trust provided Sun Life's agent, HBS Insurance, with a copy of the Plan Document on July 1, 2009. The Trust did not receive the Stop-Loss Policy until September 2009.<br><br>5/28/14 Declaration of Pamela A. Barrett in Opposition to Defendant's Motion for Summary Judgment or, In the Alternative, Partial Summary Judgment (Barrett Opp. Dec.), ¶¶ 4-5 |

| | | |
|---|---|---|
| Issues 2 through 5. | Fact 4:  The Stop-Loss Policy reimburses the Trust for medical expenses paid by the Trust which were incurred by "Covered Unit(s)," defined as "Single Employee, Employee and Family."<br><br>Ex. B to Rollinson Aff. at p. 3. | Disputed.  The Stop-Loss Policy reimburses the Trust for medical expenses paid by the Trust which were incurred by "a Covered Person."  A Covered Person is defined in the policy as "A person enrolled in Your Plan and entitled to receive benefits under Your Plan while this Policy is in force".<br><br>Stop-Loss Policy, Section II (Eligible Expenses) and Section I (Covered Person), Ex. B to Rollinson Aff., pp. 10 and 4. |
| Issue 2 through 5. | Fact 5:  The Stop-Loss Policy further specifies that an Employee must be enrolled in the Trust's Plan, and entitled to receive benefits under the Trust's Plan while the Stop-Loss Policy is in place, in order to come within coverage under the Stop-Loss Policy.<br><br>*Id.* at p. 4. | Undisputed. |
| Issues 2 through 5. | Fact 6:  The Plan describes the persons who are eligible for coverage as employees (and, by extension, an employee's dependents and/or spouse).<br><br>Ex. C to Rollinson Aff., "Eligibility Rules," pages 4 – 14. | Undisputed. |
| Issue 1. | Fact 7:  The Stop-Loss Policy describes the "Entire Contract" between Sun Life and the Trust, as follows:  "Entire Contract. This Policy, along with any Attachments, Riders, Endorsements, Addenda or Amendments, and the Application and Special Risk Questionnaire completed by | Undisputed. |

|   |   |   |
|---|---|---|
|   | You constitutes the entire contract of insurance between Us."  Rollinson Aff., Ex. B, p. 20. |   |
| Issue 1. | Fact 8:  The Stop-Loss Policy states: "Sun Life Assurance Company of Canada agrees to pay the benefits provided by this Policy *in accordance with the provisions contained herein*."  *Id*. at Ex. B, p. 1 (Emphasis in bold and italics added.) | Undisputed. |
| Issue 1. | Fact 9:  The Stop Loss Policy states that: "**This is a reimbursement policy.  You, or Your Plan Administrator, are responsible for making benefit determinations under Your Plan.  We have no duty or authority to administer, settle, adjust or provide advice regarding claims filed under Your Plan.**"  Rollinson Aff., Ex. B, p.1. (Emphasis in the original). | Undisputed. |
| Issue 1. | Fact 10:  The Stop Loss Policy states:  "For the purpose of determining Eligible Expenses under the Policy, We have the right to determine whether an Eligible Expense was paid by you in accordance with the terms of your Plan."  *Id.* at Ex. B, p. 18. | Undisputed. |
| Issue 1. | Fact 11:  The Stop Loss Policy states:  "We have the right to require documentation from You that demonstrates You paid an Eligible Expense and that payment was made in ccordance with the terms of your Plan." | Undisputed. |

4
PLTFS' RESPONSIVE SEPARATE STMT IN OPP. TO
DEFT'S MOT. FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 13-04192 BLF
P:\CLIENTS\ROOFERS\BAYAREA\CASES\Sun Life of Canada\Pleadings\Sun Life MSJ 04-25-2014\Opposition\Separate Statement\Responsive Separate Statement.doc

| | | |
|---|---|---|
| | *Id.* at Ex. B, p. 18. | |
| Issues 2 through 5. | Fact 12: The Stop Loss Policy states that: "Written proof of claim in a form and content satisfactory to Us (Sun Life), must be provided to Us as soon as reasonably possible . . ." Proof of claim "shall include . . . [a] copy of the Covered Person's original enrollment record" and "any additional information We may require to fulfill Our obligations under this Policy." Rollinson Aff., Ex. B, p. 14. | Undisputed. |
| Issues 2 through 5. | Fact 13: By claim forms dated November 2, 2011 and November 3, 2011 ("Claim Forms"), the Trust filed claims with Sun Life under the Stop-Loss Policy for medical expenses it paid on behalf of Participant X. *Id.* at ¶ 5. | Disputed. The medical expenses were paid on behalf of Participant X's newborn twins, who were enrolled in the Plan. 4/24/14 Declaration of Pamela A. Barrett in Support of Plaintiffs' Motion for Partial Summary Judgment (Dkt #36, "Barrett Dec."), ¶¶ 7-8; Rollinson Aff., Exs., D, E and F. |
| Issues 2 through 5. | Fact 14: The Claim Forms submitted and signed by a representative of the Trust list the "name of employee" as Participant X. *Id*. at ¶ 6 & Exs. D & E. | Undisputed. |
| Issues 2 through 5. | Fact 15: The Claim Forms list Participant X's Social Security Number as XXX-XX-0724. Rollinson Aff., ¶ 7 & Exs. D & E. | Undisputed. |

| | | |
|---|---|---|
| Issues 2 through 5. | Fact 16: Pursuant to Sun Life's request for Proof of claim, the Trust provided a copy of Participant X's "original enrollment record" signed by Participant X and dated May 31, 2011 ("Enrollment Form")<br><br>*Id.* at ¶ 8 & Ex. F. | It is undisputed that the Trust provided a copy of Participant X's Group Insurance Enrollment Card dated May 31, 2011, by which Participant X added his newborn twins to the Plan.  It is disputed that the 2011 enrollment form was Participant X's "original enrollment form," as Participant X was eligible for health coverage under the plan since September 2007.<br><br>Barrett Dec., ¶ 7. |
| Issues 2 through 5. | Fact 17: The Enrollment Form calls for the enrollee (Participant X) to provide his SSN.  Participant X completed the Enrollment Form, providing the SSN ending in 0724.<br><br>*Id.* at ¶ 9 & Ex. F. | Disputed.  Plaintiffs dispute that Fact 17 is material. |
| Issues 2 through 5. | Fact 18: Participant X signed the Enrollment Form swearing under penalties of perjury that the information set forth therein was true and accurate.<br><br>*Id*. at ¶ 10 & Ex. F. | Disputed.  Plaintiffs dispute that Fact 18 is material.  In addition, the Enrollment Form states: "I hereby certify under penalty of perjury under the laws of the State of California that the information given in this form is true, correct, and complete to the best of my knowledge."<br><br>Rollinson Aff., Ex. F. |
| Issues 2 through 5. | Fact 19: Correspondence between the Trust and Participant X also makes clear that the Trust required the submission of a SSN in order to become enrolled in its Plan.<br><br>Rollinson Aff., ¶ 11 & Ex. G. | Undisputed. |

| | | |
|---|---|---|
| Issues 2 through 5. | Fact 20:  Upon receipt of the Trust's Claim Forms, which included, as part of the Proof of claim, the Enrollment Form Participant X submitted to the Trust in order to obtain coverage under the Plan, Sun Life checked the SSN provided via Accurint.<br><br>*Id.* at ¶ 13 & Ex. H. | Undisputed. |
| Issues 2 through 5. | Fact 21:  Accurint is a subscription service provided by LexisNexis to professional entities such as insurance companies, and is used by Sun Life, in part, to verify claimants' Social Security Numbers<br><br>*Id*. at ¶ 13 & Ex. H. | Undisputed. |
| Issues 2 through 5. | Fact 22:  The Accurint report showed that this SSN XXX-XX-0724 belonged to a person other than Participant X.<br><br>Rollinson Aff., ¶ 14 & Ex. H. | Undisputed. |
| Issues 2 through 5. | Fact 23:  Sun Life then double-checked the accuracy of this information with Accurint's Data Team, which confirmed that the information it had on file showed that the SSN in question "is properly linked to another consumer, not [Participant X]."<br><br>*Id*. at ¶ 15 & Ex. I. | Undisputed. |
| Issues 2 through 5. | Fact 24:  Sun Life requested the "I-9" form that Participant X submitted to obtain his employment, which also sets forth the same SSN as on the Claim Forms and Enrollment Form.<br><br>*Id*. at ¶ 16. | Undisputed. |

| | | |
|---|---|---|
| Issues 2 through 5. | Fact 25: Participant X provided the same SSN on the I-9 form as he provided on the enrollment form, which the Trust then provided to Sun Life on the Sun Life claim forms.<br><br>Rollinson Aff., ¶ 16 & Ex. J. | Undisputed. |
| Issues 2 through 5. | Fact 26:  Sun Life also requested Participant X's tax returns from the Trust but the Trust declined to provide them<br><br>*Id*.  at ¶ 17 & Exs. K & L. | Undisputed. |
| Issues 2 through 5. | Fact 27:  Sun Life took the further step of attempting to verify Participant X's SSN with the Social Security Administration ("SSA").<br><br>*Id*.  at ¶ 18. | Undisputed. |
| Issues 2 through 5. | Fact 28: The SSA informed Sun Life that it would need Participant X to sign a consent form in order to release the information, that form "SSA-89" was not the correct form and that the SSA would send the correct form to Sun Life. Upon receipt of the correct consent form from the SSA (form "SSA-3288"), Sun Life forwarded the form to the Trust and the Trust returned the form to Sun Life, with Participant X's signature.<br><br>Rollinson Aff., ¶ 18 & Exs. M & N. | Undisputed. |
| Issues 2 through 5. | Fact 29:  Following receipt of the consent form, the SSA responded to Sun Life, affirmatively stating that "The Social Security Number you provided doesn't belong to Mr. [Participant X]." | Undisputed. |

| | | | |
|---|---|---|---|
| | | *Id.* at ¶ 18 & Ex. O. | |
| | Issues 2 through 5. | Fact 30:  After giving the Trust numerous opportunities to provide evidence of Participant X's lawful status, including two appellate reviews, Sun Life made the final determination to deny the Trust's request for reimbursement.<br><br>*Id.* at ¶ 19 & Exs. P, Q, R & S. | Disputed.  Plaintiffs dispute that the Trust was given "numerous opportunities to provide evidence of Participant X's lawful status," as the Trust would not have any such evidence because it does not inquire about or investigate the immigration status of its participants and its Joint Board considers such inquiries and investigations to be inappropriate because the Plan does not employ its participants.<br><br>Callahan Dec. (Dkt #35), ¶ 21. |
| | Issues 2 through 5. | Fact 31:  At this time, the Stop-Loss Policy is no longer in effect and the Trust no longer has Stop-Loss coverage with Sun Life.<br><br>Rollinson Aff., ¶ 20. | Undisputed. |
| | | | Additional Fact 32:<br><br>On November 10, 2011, Sun Life ran an Accurint Report on Participant X ("the Accurint Report).  The Accurint Report contained the following disclaimer:<br><br>"Important: The Public Records and commercially available data sources used in this system have errors.  Data is sometimes entered poorly, processed incorrectly and is generally not free from defect."<br><br>Rollinson Aff., Ex. H. |

| | | |
|---|---|---|
| | | Additional Fact 33:<br><br>In December 2011, Sun Life denied the Plan's claims based on the Accurint Report. Sun Life stated:<br><br>"In the absence of a valid Social Security number, this person may not be considered a lawful employee under the US employment laws and Immigration Act . . . This is relevant because the Stop Loss Policy (refer to the Schedule of Benefits and definition of Covered Units), The Bay Area Roofers Health and Welfare Plan and the Trust Agreement all make reference to the term 'Employee'. Where the term is not defined in the policy, the courts will look to Federal common law or other applicable sources to interpret the term 'Employee.'"<br><br>Barrett Dec., ¶ 9 and Ex. C (Letter); Callahan Dec., ¶ 11. |
| | | Additional Fact 34:<br><br>In its December 2011 denial letter, Sun Life summarily concluded that it was "unable to provide reimbursement of this claim in the absence of documentation that [Participant X] is a lawful employee in accordance with the Employment and Immigration laws of the United States."<br><br>Callahan Dec., ¶ 13, Barrett Dec., ¶9, Ex. C (Letter), pp. 1-3. |

| | | |
|---|---|---|
| | | Additional Fact 35:<br><br>By letter of January 25, 2012, the Trust advised Sun Life that the SSN on Participant X's I-9 form was the same number under which his payroll, health & welfare and pension contributions were being reported.  In addition, the Trust provided Sun Life with two other unique identifying numbers for Participant X that the Trust used to track claims and eligibility.<br><br>Rollinson Ex. P |
| | | Additional Fact 36:<br><br>In April 2012, Sun Life's claims adjuster began the process of verifying Participant X's SSN with the Social Security Administration by calling the SSA to find out which consent form to use.  Sun Life falsely stated to SSA that it was the insurer of Participant X's employer.<br><br>Rollinson Aff., Ex. M. |
| | | Additional Fact 37:<br><br>In October 2012, Sun Life received a response from the SSA of a Social Security Number mismatch, stating that the SSN "doesn't belong to [Participant X]."<br><br>Rollinson Aff., Ex. O. |
| | | Additional Fact 38:<br><br>The SSA's Social Security Number Verification Service (SSNVS) Handbook advises |

| | | |
|---|---|---|
| | | that if an employee's name and SSN do not match social security's records, that does not mean that the employee provided incorrect information or has any particular immigration status:<br><br>"SSA returns all names and SSNs submitted. If the name and SSN does not match our records, SSA advises the following:<br>• This response does not imply that you or your employee intentionally provided incorrect information about the employee's name or SSN.<br>• This response does not make any statement about your employee's immigration status.<br>• This response is not a basis, in and of itself, to take any adverse action against the employee, such as laying off, suspending, firing or discriminating against the employee.<br><br>NOTE: If you rely only on the verification information SSA provides to justify adverse action against a worker, you may violate State or Federal law and be subject to legal consequences."<br><br>SSNVS Handbook, pp. 5-6. 5/30/14 Bevington Dec., Ex. A, pp. 5-6. |
| | | Additional Fact 39:<br><br>One reason that a SSN may fail to verify is if the name does not match. SSNVS Handbook, p. 24. In a case where an employee's SSN |

| | | |
|---|---|---|
| | | fails to verify, the handbook states that, "[i]f the employee is unable to provide a valid SSN, you are encouraged to document your efforts to obtain the correct information. (Documentation should be retained with payroll records for a period of three (3) years.)." SSNVS Handbook, p. 27.  Again, the handbook makes clear that a mismatch cannot support any inference about the employee's immigration status or justify any adverse employment action.  SSNVS Handbook, p. 28.<br><br>5/30/14 Bevington Dec., Ex. A, pp. 24, 27-28. |
| | | Additional Fact 40:<br><br>Sun Life received a copy of Participant X's Permanent Resident Card (Green Card).<br><br>Rollinson Aff., Ex. H, p. 2. |
| | | Additional Fact 41:<br><br>Sun Life refused to meet with Participant X.<br><br>Rollinson Aff., Ex. S, p. 3. |
| | | Additional Fact 42:<br><br>Sun Life refused to inquire with DHS or INS about Participant X's status.<br><br>Rollinson Aff., Ex. S, p. 5. |
| | | Additional Fact 43:<br><br>Sun Life concluded that Participant X was not a lawful employee based solely on the SSN discrepancy. |

| | | |
|---|---|---|
| | | Rollinson Aff., Ex. S, p. 5. |
| | | Additional Fact 44:<br><br>The Trust's Joint Board of Trustees construes the term "employee," as used in the Plan, to include any employee regardless of immigration status.<br><br>Declaration of William D. Callahan, Dkt #35, ¶ 19. |
| | | Additional Fact 45:<br><br>The Joint Board does not interpret the Plan to impose any eligibility requirements other than those expressly stated in the Plan, and those eligibility requirements do not include any particular immigration status.<br><br>Callahan Dec., Dkt #35, ¶ 20. |
| | | Additional Fact 46:<br><br>The Policy provides:<br><br>"This Policy is delivered in California and is subject to the laws of that jurisdiction."<br><br>Rollinson Aff., Ex. B, p. 1. |
| | | Additional Fact 47<br><br>The Board of Trustees has the power to establish the benefits to be provided under the Plan, the eligibility requirements therefor, and all other matters appropriate to the Plan.<br><br>Trust Agrt, Art. VI.B., Callahan Dec., ¶ 3 and Ex. A, p. 18. |

| | | |
|---|---|---|
| | | Additional Fact 48:<br><br>The Joint Board has the exclusive authority to control and manage the operation of the Trust and its assets, and may exercise all lawful powers appropriate to the exercise of its authority, including the power to determine all questions relating to eligibility for benefits and how they will be provided.  The Joint Board's decisions on such questions are binding on all persons to the fullest extent permitted by law.<br><br>Trust Agreement, Arts. IV.G., VI.A.-B., Callahan Dec., ¶ 3 and Ex. A, pp. 32, 38, and Callahan Dec., ¶ 4. |

I attest that the evidence cited herein fairly and accurately supports the facts asserted.

Date:  May 30, 2014                SALTZMAN & JOHNSON LAW CORPORATION


                        By:  /S/ ANNE M. BEVINGTON_____
                            Anne M. Bevington
                            Attorneys for Plaintiffs