Sean P. Nalty CA Bar No. 121253
sean.nalty@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:    415.442.4810
Facsimile:    415.442.4870

Byrne J. Decker, *Pro Hac Vice*
bdecker@pierceatwood.com
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
Telephone:    207.791.1152
Facsimile:    207.791.1350

Attorneys for Defendant
SUN LIFE ASSURANCE COMPANY OF CANADA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE**

| | |
|---|---|
| BAY AREA ROOFERS HEALTH AND WELFARE TRUST, its JOINT BOARD OF TRUSTEES, and KEITH ROBNETT and BRUCE LAU, as Trustees,<br><br>Plaintiffs,<br><br>v.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA, and DOES 1-10, inclusive,<br><br>Defendant. | Case No. 3:13-cv-04192-BLF<br><br>**DEFEFNDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:            August 9, 2014<br>Time:            9:00 a.m.<br>Before:         Hon. Beth Labson Freeman<br>                     Courtroom 3, 5th Floor<br><br>Complaint Filed:  September 10, 2013<br>Trial Date:<br>Judge:          Hon. Beth Labson Freeman |

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

   A. The undisputed evidence in the summary judgment record is that the SSN provided on the Trust's Proof of Claim is invalid. ........................................................................................ 1

   B. Sun Life properly relied on *Garcia* as the only case that has expressly addressed the issues here and none of the Trustees' authorities are to the contrary. ............................................. 4

   C. The Trustees' position deserves no deference and they exercised no discretion. .................. 7

   D. The Court should dismiss the Trustees' ERISA claim. ......................................................... 9

   E. Plaintiffs' Extra-Contractual Claims Fail. ............................................................................ 10

     1. Plaintiffs' bad faith and UCL claims fail as a matter of law. ........................................... 10

     2. The UCL Claim Fails .......................................................................................................... 13

     3. The punitive damages claim must be dismissed. .............................................................. 15

II. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*AG Equip. Co. v. AIG Ins. Co.*,
   2009 WL 223106 (N.D. Okla. Jan. 28, 2009) .................................................................. 8

*AG Equip. Co. v. AIG Ins. Co.*,
   636 F. Supp. 2d 1210 (W.D. Okla. 2009) .................................................................. 8, 9

*Aramark* v. *Aramark Facility Services v. Service Employees International Union, Local 1877*,
   530 F.3d 817 (9th Cir. 2008) ..................................................................................... 1, 2

*Bollinger Shipyards v. Director*,
   604 F.3d 864 (5th Cir. 2010) ............................................................................................ 5

*Brinderson - Newberg Joint Venture v. Pac. Erectors, Inc.*,
   971 F.2d 272 (9th Cir. 1992) ......................................................................................... 11

*Cal. Serv. Station Etc. Ass'n v. Union Oil Co.*,
   232 Cal. App. 3d 44 (1991) ........................................................................................... 13

*Cortez v. Purolator Air Filtration Products Co.*,
   23 Cal. 4th 163 (2000) .................................................................................................. 13

*Farmers Brothers Coffee v. Wkr's Comp. App. Bd.*,
   133 Cal. App.4th 533 (2005) ........................................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*,
   528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ................................................... 9

*Garcia v. American United Life Insurance Company*,
   2009 WL 6327459 (E.D. Texas December 9, 2009)(Report and Recommendation),
   adopted by 2010 WL 1379106 (E.D. Texas March 31, 2010), affirmed on appeal,
   422 Fed. Appx. 306 (5th Cir. 2011) ........................................................................ passim

*Guebara v. Allstate Ins. Co.*,
   237 F.3d 987 (9th Cir. 2001) ......................................................................................... 12

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ......................................................................................... 13

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ........................................................................................................ 8

*Moore v. State Farm Mut. Auto. Ins. Co.*,
  2011 U.S. Dist. LEXIS 46769 (N.D. Cal. 2011) ................................................................. 11, 12

*Moradi-Shalal v. Fireman's Fund Ins. Companies,*
  46 Cal.3d 287 (1988) .................................................................................................................. 14

*Opsal v. United Services Auto. Assn.*,
  2 Cal. App. 4th 1197 (1991) ....................................................................................................... 12

*Sell v. Nationwide Mut. Ins. Co.*,
  2010 U.S. Dist. LEXIS 121513 (E.D. Cal. 2010) ....................................................................... 11

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) ................................................................................................................. 6, 9

*Wilson v. 21 Century Ins. Co.*,
  42 Cal. 4th 713 (2001) ................................................................................................................ 12

*Zhang v. Superior Court*,
  57 Cal. 4th 364 (2013) ................................................................................................................ 14

**Statutes**

Section 502(a)(3) ............................................................................................................................. 9

Section 502(a)(3)(B)(ii) .................................................................................................................. 9

**Other Authorities**

Business & Professions Code ("BP") § 17203 .............................................................................. 13

Unfair Insurance Practices Act ("UIPA") ..................................................................................... 14

## I.  INTRODUCTION

One indisputable premise emerges through the thicket of briefing in this case:  Exactly one case has *directly considered* the issues presented to this Court with respect to the parties' cross motions.  In that case, the court specifically held that an undocumented worker without a valid Social Security Number (SSN) "cannot meet the policy requirement of employment [with the participating employer] in a lawful manner" and that where, as here, the worker in question "was not eligible for employment. . . and thus not lawfully employed . . . [a] denial of benefits [is required]."  *See Garcia v. American United Life Insurance Company*, 2009 WL 6327459 (E.D. Texas December 9, 2009)(Report and Recommendation), adopted by 2010 WL 1379106 (E.D. Texas March 31, 2010), affirmed on appeal, 422 Fed. Appx. 306 (5th Cir. 2011).

There is no dispute that Sun Life followed the *Garcia* court's guidance in making the benefits determination at issue.  The Trustees vainly attempt to distinguish *Garcia* but they do not cite a single case that has expressly considered the issue and disagreed with *Garcia*.  Yet, the Trustees contend that not only did Sun Life err in relying on *Garcia*, they claim that Sun Life's determination constitutes insurance bad faith.

As explained below in detail and in Sun Life's previous filings, it is the Trustees who are wrong.  Sun Life is entitled to judgment.

## II.  ARGUMENT

### A.  **The undisputed evidence in the summary judgment record is that the SSN provided on the Trust's Proof of Claim is invalid.**

The Trustees rely on *Aramark* v. *Aramark Facility Services v. Service Employees International Union, Local 1877*, 530 F.3d 817 (9th Cir. 2008) for the proposition that Participant X's status as an undocumented alien, not authorized to work in the United States, is an "unproven

inference." Plaintiff's Opposition at 2. The Trustees are mistaken.

It was the Trustees' burden, not Sun Life's, to provide "Proof of Claim", under the Stop-Loss Policy. *See* Ex. B to Rollinson Aff. at 14 ("Written proof of claim in a form and content satisfactory to Us, must be provided to Us as soon as reasonably possible . . . ." Proof of claim "shall include . . . [a] copy of the Covered Person's original enrollment record" and "any additional information We may require to fulfill Our obligations under this Policy."). The "written proof of claim" the Trustees submitted provided the SSN for Participant X ending in 0724. Ex. F to Rollinson Aff.

Sun Life attempted to verify the Proof of Claim submitted and discovered that the SSN provided does not belong to Participant X. The results of Sun Life's investigation constitute the evidence in the summary judgment record, all of which indicates that the SSN provided on the Trustees' Proof of Claim, does not belong to Participant X. The evidence includes not only the Accurint report[1] (Ex. H to Rollinson Aff.), and the response from Accurint's Data Team, which confirmed that the SSN in question "is properly linked to another consumer, not [Participant X]" (Ex. I to Rollinson Aff.) but also the affirmative statement from the SSA in response to Sun Life's inquiry (authorized by Participant X) that the SSN listed for Participant X does not belong to Participant X. Ex. O to Rollinson Aff.. By contrast, there is no evidence whatsoever in the summary judgment record that even supports an inference that the SSN provided as Proof of Claim does belong to Participant X. Therefore, the Trustees undisputedly did not carry their burden of providing *Proof* of Claim and even if Sun Life had the burden, that burden is satisfied as a matter of law because the evidence in the record is undisputed.

Moreover, as explained in Sun Life's Opposition, the Trustees' reliance on *Aramark* is

---

[1] The Trustees rely on a disclaimer set forth on the Accurint Report, which states that sometimes commercially available data sources contain errors. Plaintiff's Opp. p. 5:20-22. But the Trustees do not submit a shred of evidence that the Report contained an error *in this case*. In any event, Sun Life followed up with the Accurint Data Team and later with the SSA itself, both of which confirmed, without any disclaimer, that the SSN in question belongs to a person other than Participant X. The Trustees' disclaimer argument fails in this case.

misplaced. Both the "no-match" letters at issue in *Aramark*, and the SSA's "Social Security Number Verification Service Handbook" the Trustees cite, include express disclaimers along with the information provided. Thus, when an *employer* receives a "no-match" letter or uses the SSA on-line Verification Service, the letter or response includes a specific disclaimer from the SSA, to the effect that *the employer* should not take adverse employment actions against workers based solely on a SSA "no-match." However, here Sun Life did not receive a "no-match letter", did not utilize the on-line "Social Security Number Verification Service" and did not take any "adverse employment action" against Participant X. Rather, Sun Life communicated directly with the SSA branch office pursuant to a broad authorization signed by Participant X. Ex. N to Rollinson Aff. And Sun Life received a direct response from the SSA that contained none of the disclaimer language the Trustees rely on, or any disclaimer language at all. To the contrary, the SSA specifically stated that the SSN set forth on the Trust's Proof of Claim, "doesn't belong to [Participant X]." Ex. O to Rollinson Aff.

Finally, the fact that more investigation may have revealed additional indicia of illegal status does not mean that the record here contains a genuine dispute of material fact. It does not. As explained above, there is *no evidence* in the record that the SSN presented to Sun Life by the Trustees as Proof of Claim, belongs to Participant X. Again, the Trustees bore the burden of providing Proof of Claim and although they contend that they somehow were unable to provide information as to the validity of the SSN they submitted, they provide no support for that contention. The Trustees were able to obtain Participant X's signature on the authorization Sun Life used to contact the SSA. Ex. N to Rollinson Aff. Similarly, if there was any evidence that the SSN provided actually belonged to Participant X, surely the Trustees could have obtained it from Participant X or elsewhere, and provided it to Sun Life. While the Trustees make much of the fact that mistakes can be made, they provide *no evidence* that the Accurint Report, the communication from Accurint's Data Team or the SSA's direct statement that the SSN provided "doesn't belong to

[Participant X]", were the result of any error or mistake in this case.  *See* Ex. O to Rollinson Aff. Sun Life repeatedly asked the Trustees to provide such evidence.  Rollinson Aff. ¶ 19.  The Trustees simply chose not to.  As such, the record is devoid of any evidence that the SSN provided by Participant X was his own.

### B. Sun Life properly relied on *Garcia* as the only case that has expressly addressed the issues here and none of the Trustees' authorities are to the contrary.

The Trustees again attempt to distinguish *Garcia* by focusing on the fact that the insurer in *Garcia* made a belt-and-suspenders decision to rescind the worker's coverage in addition to denying the claim for benefits. Plaintiff's Opp., p. 11:14-25.  The Trustees then simply pretend that the rest of the opinion, upholding the insurer's denial of the claim for benefits, doesn't exist. The Trustees simply ignore the *Garcia* court's holdings that directly refute their contentions.

The Trustees claim that this case is not like *Garcia* because "even if Sun Life . . . received the allegedly fraudulent enrollment form as part of the proof of claim, it could not have relied on the SSN information when it issued the Policy." Plaintiff's Opposition at 11:26-27.  But in *Garcia*, just as in this case, the worker submitted the fraudulent SSN to the insurance company when he enrolled in the plan, *after* the insurer issued the group policy. 2009 WL 6327459 at *3.  Just as in this case, the insurer in *Garcia* attempted to verify the validity of the SSN *when the claim was made*. *Id.*  At bottom, the Trustees are simply wrong when they argue that *Garcia* is only about rescission.  Directly to the contrary, the *Garcia* Court expressly upheld, after extensive discussion, the insurer's separate decision to deny the claim, stating that "*eligibility for employment under the U.S. immigration laws would be material for any plan.*"  2010 WL 1379106 at * 4 (emphasis added))

The Trustees also cite the dictionary for the contention that the only requirement in order to be an "employee" *for the purpose of the Stop-Loss Policy*, is that the person "works for another person or for a company for wages or a salary", such that the legality of the employment relationship and the worker's "eligibility for employment", is entirely irrelevant, absent a specific policy provision so stating to the contrary.  Plaintiff's Opp., p. 10:27-28. The Trustees go so far as

to characterize Sun Life's argument on this point as "pure sophistry" and "simply a pretext for its failure to pay the claim." *Id.*

Of course, however, Sun Life's alleged "pretext" and its position of "pure sophistry", is exactly what the *Garcia* Court held in rejecting the precise argument the Trustees put forth. 2009 WL 6327459 at *10 (rejecting argument that unauthorized workers are included unless policy specifically covers only "lawful" workers, and holding that an unauthorized worker "cannot meet the policy requirement of 'employment with the Group Policyholder' in a lawful manner", that such "undocumented status prevents him from legally obtaining employment, let alone coverage under a group insurance policy" and that "[the insurer] *correctly* determined that [the unauthorized worker in question] was not *eligible for employment* with [the employer] and thus not lawfully employed . . . , *requiring denial of benefits* . . .")(emphasis added). Again, the Trustees claim that "eligibility for employment" is entirely irrelevant, but simply ignore the fact that *Garcia* specifically held not only that eligibility for employment was essential for coverage to exist under the policy at issue in *Garcia* (which was identical in all material respects to the Stop-Loss Policy at issue here), but also that "*eligibility for employment under the U.S. immigration laws would be material for any plan.*" 2010 WL 1379106 at * 4 (emphasis added).

The Trustees also imply that *Garcia* is somehow contrary to California law as expressed in *Farmers Brothers Coffee v. Wkr's Comp. App. Bd.*, 133 Cal. App.4th 533 (2005), which allowed un-documented aliens to enforce California's worker's compensation laws. But that is clearly not so. The Fifth Circuit's decision in *Bollinger Shipyards v. Director*, 604 F.3d 864, 878 (5th Cir. 2010) is directly in line with *Farmers Brothers* in holding that undocumented aliens may enforce worker's compensation laws. Just as *Bollinger Shipyards* and *Garcia* are not in conflict, Sun Life's position in reliance on *Garcia*, is not in conflict with *Farmers Brothers*. *See* Sun Life's Opp., p. 14, n.3.

The Trustees also mischaracterize Sun Life's position and argue circularly when they claim that "Sun Life is asking this Court to order that an allegedly unauthorized worker who allegedly

used a false SSN to obtain employment has no rights to benefits of employment", that acceptance of Sun Life's position "would encourage employers to deny employment benefits to certain workers based on their immigration status" and is somehow inconsistent with the Trustees' fiduciary duties. Plaintiff's Opp., p. 13:23-26. Contrary to the Trustees' contentions, Sun Life is not claiming that unauthorized workers have no rights. Sun Life has clearly acknowledged the balancing analysis required whenever a court must decide whether unauthorized workers are entitled to enforce statutory mandates in connection with on the job injuries or employers' violations of such mandates. Sun Life's Opp., pp. 14-15. But no statutory mandates are involved in this case and therefore no balancing analysis is required. *See id.* Unlike, for instance, workers' compensation, neither the group life insurance at issue in *Garcia* nor the group stop-loss coverage at issue here were provided pursuant to any mandate or requirement.

Moreover, the group life insurer in *Garcia* was an ERISA fiduciary just like the Trustees. 2009 WL 6327459 at * 6-7. The courts in *Garcia* found no inconsistency whatsoever between the insurer's fiduciary duties and the conclusion that workers not eligible for employment are not entitled to insurance benefits reserved for employees. *See also Varity Corp. v. Howe*, 516 U.S. 489, 513-14 (1996)(fiduciary duties, which run to the plan as a whole, do not favor payment over non-payment).

Nor do the Trustees explain how a dispute between two business entities over insurance coverage could possibly encourage employers to discriminate against aliens. As *Garcia* explained, being able to verify the identity of insured persons is critically important to insurers for a number of reasons. 422 Fed. App. at 312; 2010 WL 1379106 at * 4. As such, a valid SSN "would be material to any plan." *Id.*

Finally, the inapposite nature of the authorities the Trustees rely on is demonstrated by their tacit admission that Sun Life's decision would be correct if the Plan or the Stop-Loss Policy contained an express exclusion for undocumented aliens. Plaintiff's Motion at 13:23-25. Of

6  Case No. 3:13-cv-04192-BLF

course, if one were to accept the Trustees' erroneous arguments, such an exclusion would be illegal because, according to the Trustees, once an undocumented alien fraudulently procures employment, he is fully entitled to everything, both statutory and contractual, that legal employees are entitled to. And such an express exclusion would do nothing to solve the problems the Trustees contend are created by virtue of insurers or administrators attempting to verify the validity of insureds' SSNs. If, as the Trustees contend, pursuant to law or policy considerations, neither administrators nor insurers should ever seek to verify the SSN's of enrolled workers, then the existence of an express exclusion for undocumented aliens would be entirely irrelevant.

Thus, the Trustees are clearly wrong about either law or policy somehow requiring the result they seek.  Contrary to the Trustees' contention, the only question here is whether it was necessary for Sun Life to add an express exclusion to its Stop-Loss Policy in order to make even more clear what common sense dictates; that workers who cannot be "employees" under federal law should not be deemed "employees" under the Stop-Loss Policy.  One court, *Garcia*, has expressly considered this precise question and has held that the answer is no.  The Trustees offer no cases that have held to the contrary.  Sun Life is entitled to judgment.

### C. The Trustees' position deserves no deference and they exercised no discretion.

Sun Life has explained that the cases the Trustees cite in support of their claim of "deference" are inapposite because, unlike here, the policies in those cases expressly incorporated the underlying ERISA plan and contained none of the language set forth in the Sun Life Stop-Loss Policy, which gives Sun Life the right to make its own independent determination.  Sun Life's Opp., pp. 15-16.  The Trustees' only response is to erroneously claim, with no support whatsoever, that such critical differences in policy language are not material distinctions.  Plaintiff's Opp., p. 15:11-15.  They essentially ask the Court to simply assume that the Plan is "incorporated by reference." *Id.*  Under the Trustees' argument, all provisions of underlying ERISA plans would

automatically be "incorporated" in all stop-loss policies, regardless of the specific policy terms. Again the Trustees are wrong.

The provision of the Plan that the Trustees must rely on in support of their argument that Sun Life must "defer" to their position, is the Plan's discretionary grant, which states that the Trustees have discretion to construe the Plan terms and make determinations in connection with benefits claims. *See* Plaintiff's Motion at pp. 1-2. There is not one word in the Stop-Loss Policy that could possibly support an inference that the parties intended for the Stop-Loss Policy to "incorporate" that discretionary grant provision such that it would simply bind Sun Life to whatever decisions the Trustees make. Indeed, there is no "reference" to that provision in the Stop-Loss Policy whatsoever, let alone a "clear and unequivocal" reference. *See* Plaintiff's Opp., p. 15:16-23(acknowledging "clear and unequivocal" requirement for incorporation by reference). And again, unlike the cases the Trustees rely on, here there is specific language in the Stop-Loss Policy that establishes Sun Life's right to make an independent coverage determination, thereby directly rebutting any "incorporation by reference" argument. *See* Sun Life's Opp., p. 7:15-28.

Nor have the Trustees demonstrated any actual exercise of discretion to which deference could possibly be owed. The Trustees claim that they drafted the eligibility requirements for their Plan, but that is a plan settlor function not an exercise of discretion. *See e.g., Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)(adopting terms of plan is settlor action rather than discretionary fiduciary action). Otherwise, the Trustees simply point to their appeal letters in response to Sun Life's claim determination. Plaintiff's Opp., p. 17:14-16. Again, simply paying a claim and then taking a particular position in the context of a dispute with a third party over reimbursement of that claim is not an exercise of discretion. *See* Sun Life's Opp., p. 8:3-10 (discussing *AG Equip. Co. v. AIG Ins. Co*., 2009 WL 223106 at *7 (N.D. Okla. Jan. 28, 2009); *AG Equip. Co. v. AIG Ins. Co*., 636 F. Supp. 2d 1210, 1224 (W.D. Okla. 2009)(holding that employer failed to demonstrate that it

actually adopted the interpretation it espoused in litigation, any time prior to when the dispute with its stop-loss insurer arose).

### D. The Court should dismiss the Trustees' ERISA claim.

The Trustees claim that there are essentially no standing limitations on claims seeking "other, appropriate equitable relief" under Section 502(a)(3)(B)(ii) to allegedly "enforce the terms of the Plan." Plaintiff's Opp., p. 18:21-23. Apparently, the Trustees contend that they can simply file a Complaint against anyone they choose and obtain a judicial declaration concerning their Plan, without having to establish either a violation of the Plan/ERISA, or any direct injury. Not surprisingly, the Trustees do not cite a single case in support of that proposition because they are wrong.

The Supreme Court has clearly held that Section 502(a)(3) of ERISA is a "catch-all provision that acts as a safety net, offering appropriate equitable relief for *injuries caused by violations . . .*" *Varity Corp. v. Howe*, 516 U.S. 489, 516 (1996)(emphasis added). The Trustees here allege neither a violation nor an injury with respect to ERISA rights. Rather, the parties' dispute does not concern ERISA rights at all, but rather a stop-loss insurance policy governed by state law. For this reason the Trustees satisfy neither the statutory nor Constitutional requirements that the injury be "fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *AG Equip. Co. v. AIG Ins. Co.*, 636 F. Supp. 2d 1210, 1223 (W.D. Okla. 2009)("ERISA does not apply to the parties' breach of contract claims concerning reimbursement of . . . medical expenses under [a Stop Loss] Policy").

The Trustees claim that all they need show is a "substantial controversy" between parties having "adverse legal interests." Plaintiff's Opp., p. 19:17-21. But again, the only controversy between the parties concerns the Stop-Loss Policy and the Court's ruling on the Trustees' state law

claims will resolve that controversy. There is no controversy implicating ERISA. Moreover, the Trustees did not renew the Stop-Loss Policy (Rollinson Aff. at ¶20) and therefore the Trustees' contentions regarding the need for "declaratory relief" are meritless.

### E.  Plaintiffs' Extra-Contractual Claims Fail.

#### 1.  Plaintiffs' bad faith and UCL claims fail as a matter of law.

The Trustees do not dispute that their claims for breach of the covenant of good faith and fair dealing ("bad faith") and violation of the Unfair Practices Act ("UCL Claim") fail as a matter of law if the Court concludes that Sun Life's coverage decision was correct. The issue is whether the Trustees can maintain these claims if the Court concludes that coverage exists under the Stop-Loss Policy. The Trustees' Opposition establishes that, as a matter of law, the Trustees cannot maintain these claims even if coverage exists.

The Trustees' bad faith claim is based on the fiction that: "Sun Life of Canada implement[ed] its hidden post-claim practice of running an Accurint check, and once it discovered a discrepancy regarding Participant X's social security number, Sun Life of Canada sought to deny the Plan's legitimate claim by introducing immigration status as a new, additional condition of coverage." Plaintiff's Opp., p. 22:13-17.  In making this argument, the Trustees ignore the undisputed fact that Sun Life received confirmation from the SSA that the SSN used by Participant X belonged to another individual.  Ex. O to Rollinson Aff.  The claim decision was not just based on an Accurint no-match. The Trustees also ignore the undisputed fact that Participant X presented this false SSN as part of his employment application. In making this argument, the Trustees ignore that the Stop-Loss Policy limits coverage to "employees" so being legally able to work in the United States was essential to coverage and not a "new, additional condition of coverage."  The Trustees ignore that the Proof of Claim, mandated under the Stop-Loss Policy, requires that the Trust submit a copy of the Covered Person's original enrollment record which must contain the

worker's SSN. Ex. B. to Rollinson Aff. at 14. Finally, in making this argument, the Trustees ignore that the letters denying the Trustees' appeals establish without dispute that Sun Life based the denial of the claim in large part on the law as stated in *Garcia v. American United Life Insurance Company*, the only case in the United States that had addressed the issue; the denial was not part of some fictitious nefarious scheme. Rollinson Aff. at ¶ 19.

The Trustees continue their misguided opposition by arguing that "Participant X had presented a facially valid Green Card to his Employer suggesting that he was a legal immigrant authorized to work in the United States." Plaintiff's Opp., p. 23:1-2. This presumption by the Trustees does not change the fact that Participant X used a SSN that belonged to someone else to obtain employment through the fraudulent submission of that number. The Trustees do not tell the Court how the purported presentation of this Green Card allowed Participant X to work legally in the United States because, in fact, presentation of the card did not allow him to work legally.

The Trustees go on to accuse Sun Life of bad faith because the Company did not investigate Participant X's Green Card, did not interview Participant X, and did not follow-up with the Department of Homeland Security or INS to obtain a determination of Participant X's immigration status. Plaintiff's Opp., p. 23:12-23. This argument is meritless for two reasons. First, under California law, an insurer discharges its duty of good faith if it investigates thoroughly until a genuine dispute over liability arises; once such a dispute arises, it need investigate no further. *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 283 (9th Cir. 1992); *Moore v. State Farm Mut. Auto. Ins. Co.*, 2011 U.S. Dist. LEXIS 46769, at *21 (N.D. Cal. 2011)( Judge Koh)("Thus, even in a case where benefits are ultimately found to be due, an insurer will not be liable if it conducted a thorough and fair investigation, after which there remained a genuine dispute as to coverage liability."); *Sell v. Nationwide Mut. Ins. Co*., 2010 U.S. Dist. LEXIS 121513, at *11 (E.D. Cal. 2010) ("An insurer need not engage in additional investigation of a tendered

claim if its initial decision denying coverage was based on a reasonable interpretation of a policy. *Brinderson - Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 282-83 (9th Cir. 1992).")

Second, the Trustees fail to explain how information obtained from this additional investigation would support their claim for benefits. *Wilson v. 21 Century Ins. Co.*, 42 Cal. 4th 713, (2001)("A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim (Emphasis Added)"); *Moore v. State Farm Mut. Auto. Ins. Co.*, supra 2011 U.S. Dist. LEXIS 46769, at *26 (Citing *Wilson*, an "insurer acts unreasonably if it 'ignores evidence available to it which supports the claim. . .'") A laundry list of investigation topics is not enough.[2] The Trustees must establish what information would materialize from the investigation that Sun Life did not consider that would support their claim for benefits.  The Trustees have not made this showing because any information that would result from this additional investigation would not change the fact that Participant X obtained employment through the submission of a false SSN.

All of these invalid arguments by the Trustees are an attempt to distract the Court from the fact that five federal judges in *Garcia* rejected arguments similar to those made by the Trustees during the administrative process that led to the denial of the claim.  As a matter of law, Sun Life cannot be found to have withheld benefits in bad faith when the claim decision was based on the law as stated by five judges even if this Court analyzes or applies the law differently.[3]  This is particularly true since California courts have not spoken on the coverage issue and the courts in *Garcia* were the only courts in the country to consider this issue prior to this Court. *See*, *Opsal v.*

---

[2] It is also important to note that Sun Life clearly informed the Trustees that Sun Life would be happy to review any information the Trustees, who bore the burden of providing Proof of Claim, wished to submit, whether from DHS, INS or elsewhere. Ex. S to Rollinson Aff., p.5.

[3] Indeed, the Trustees attempt to distinguish *Garcia* on the purported grounds that the five judges in *Garcia* found only that the insurer in that case did not abuse its discretion in denying the claim.  Plaintiff's Motion at 18-19.  The Trustees do not argue that the *Garcia* court somehow erred in that determination.  While the Trustees are wrong that *Garcia* is so limited, the fact that they do not challenge in any way the *Garcia* Court's finding of no abuse of discretion, clearly demonstrates that Sun Life's determination, in reliance on *Garcia*, cannot possibly constitute insurance bad faith.

*United Services Auto. Assn.*, 2 Cal. App. 4th 1197, 1205-06 (1991)(An erroneous coverage position, in the face of unsettled law, is not bad faith as a matter of law.) The genuine dispute doctrine grew out of, and is most commonly applied to, situations where a court disagrees with an insurer's application of the law. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 993 (9th Cir. 2001)("The Ninth Circuit has affirmed the dismissal of bad faith claims in numerous cases over the past 17 years because of genuine issues about liability under California law.")  Clearly, this matter involves a textbook legal dispute concerning in large part the application of *Garcia* to the facts in this matter and therefore the Trustees' claim for bad faith has no merit as a matter of law.

### 2. **The UCL Claim Fails**

The Trustees' attempt to avoid summary judgment on their UCL Claim also is unavailing. The Trustees argue that alleged bad faith conduct also can be unlawful conduct under the UCL and that all they have to show is that they were deceived and suffered economic injury as a result of the deception. This argument ignores the fact that the Trustees are not entitled to the remedies provided under the UCL.  The ability to allege unfair practices does not entitle the Trustees to the remedies provided under the UCL.  The remedies are limited to restitution and injunctive relief and other equitable orders the court may fashion.  Business & Professions Code ("BP") § 17203.

The Trustees ignore in their opposition the fact that they do not have Article III standing to pursue injunctive relief under the UCL in federal court. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). The Trustees concede that they cannot demonstrate a real or immediate threat of an irreparable injury. *Id.*  Indeed, Sun Life's decision on the Trustees' claim is not a "real or immediate threat" but rather past conduct that cannot be subject to an injunction. *Cal. Serv. Station Etc. Ass'n v. Union Oil Co.*, 232 Cal. App. 3d 44, 57 (1991).  The Stop-Loss Policy was not renewed by the Trust so there is no possibility of other claims. Rollinson Aff. at ¶ 20.

Similarly, the Trustees do not address the fact that their alleged damages are limited to contract damages which they cannot recover under the UCL. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 173 (2000). The Trustees cite *Cortez* and argue that the trial court can make any orders "necessary to restore money or property." Plaintiff's Opp., p. 24:6-9. However, the Trustees do not seek to restore their money or property. They seek Sun Life's money in the form of contract damages.

Rather than addressing Sun Life's arguments, the Trustees rely on *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013) ("*Zhang*"). There, the Supreme Court concluded that an action under the UCL could be brought based on the alleged violation of the Unfair Insurance Practices Act ("UIPA") without violating the holding in *Moradi-Shalal v. Fireman's Fund Ins. Companies,* 46 Cal.3d 287, 304 (1988). In affirming the order of the appellate court that reversed the granting of a demurrer by the trial court, the Supreme Court concluded that allegations of bad faith claims handling can also constitute an unfair business practice under the UCL. However, the issue in this matter is not the ability of the Trustees to allege unfair business practices; the issue is that, as a matter of law, they are not entitled to any of the remedies available under the UCL. The court in *Zhang* in fact confirmed that the Trustees have no available remedies, holding that "an action under the UCL is not an all-purpose substitute for a tort or contract action. Instead, the act provides an equitable means through which . . . private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices. . . Prevailing plaintiffs are generally limited to injunctive relief and restitution." *Id.* at 371.

The opinion in *Zhang* does not grant the Trustees Article III standing to sue for injunctive relief in federal court. It does not provide a legal basis to recover contract damages under the UCL. Accordingly, Sun Life is entitled to judgment on the Trustees' UCL claim as a matter of law.

### 3. The punitive damages claim must be dismissed.

The Trustees do not oppose Sun Life's motion for summary judgment on their claim for punitive damages. Accordingly, Sun Life is entitled to judgment on this claim.

## II. CONCLUSION

Based on the forgoing, Sun Life respectfully requests that this Court and enter summary judgment in favor of Sun Life on all of plaintiffs' claims for relief in this matter.

DATED:  June 20, 2014                     OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

PIERCE ATWOOD LLP

By: */s/ Sean P. Nalty*
    Sean P. Nalty
    Byrne J. Decker, *Pro Hac Vice*

Attorneys for Defendant SUN LIFE ASSURANCE COMPANY OF CANADA

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2014, I electronically filed the within document using the CM/ECF system which will send notification of such filing(s) to the following:

>Richard C. Johnson (SBN 40881)
>Anne M. Bevington (SBN 111320)
>Shivani Nanda (SBN 253891)
>SALTZMAN & JOHNSON LAW CORPORATION
>44 Montgomery Street, Suite 2110
>San Francisco, CA 94104
>Telephone: (415) 882-7900
>Facsimile: (415) 882-9287
>Email: djohnson@sjiawcorp.com
>          abevington@sjlawcorp.com
>          snanda@sjlawcorp.com

Dated:   June 20, 2014                              */s/ Sean P. Nalty*
                                                                Sean P. Nalty