Sean P. Nalty CA Bar No. 121253
sean.nalty@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA 94105
Telephone: 415.442.4810
Facsimile: 415.442.4870

Byrne J. Decker, *Pro Hac Vice*
bdecker@pierceatwood.com
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
Telephone: 207.791.1152
Facsimile: 207.791.1350

Attorneys for Defendant
SUN LIFE ASSURANCE COMPANY OF CANADA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE**

BAY AREA ROOFERS HEALTH AND WELFARE TRUST, its JOINT BOARD OF TRUSTEES, and KEITH ROBNETT and BRUCE LAU, as Trustees,

Plaintiffs,

v.

SUN LIFE ASSURANCE COMPANY OF CANADA, and DOES 1-10, inclusive,

Defendant.

Case No. 3:13-cv-04192-BLF

**SUN LIFE ASSURANCE COMPANY OF CANADA'S OPPOSITION TO PLAINTIFFS' ADDITIONAL STATEMENT OF UNDISPUTED FACTS**

Date: August 7, 2014
Time: 9:00 a.m.
Court: Courtroom 3, 5th Floor
Judge: Hon. Beth Labson Freeman

Complaint Filed: September 10, 2013
Trial Date:
Judge: Hon. Beth Labson Freeman

Pursuant to District Judge Beth Labson Freeman's Standing Order Re Civil Case, defendant Sun Life Assurance Company of Canada ("Sun Life") hereby responds to plaintiffs Bay Area Roofers Health and Welfare Trust, its Joint Board of Trustees, and Keith Robnett and Bruce Lau ("plaintiffs") Additional Statement of Uncontroverted Facts as follows.

This Court's Standing Order requires that the moving party on a motion for summary judgment " provide a short and concise statement of the material facts as to which the moving party contends there is no genuine dispute. Plaintiffs' statement of material facts contains multiple questions of law dependent on the interpretation of contractual provisions. Plaintiffs state numerous purported undisputed facts that mischaracterize the basis for Sun Life's denial of the claim that is the subject of this matter.

The terms of the Stop-Loss Policy that is the subject of this matter are undisputed. The terms of the employee benefit plan are undisputed and the terms of the trust agreement are undisputed. It is undisputed that the Social Security number used by Participant X did not belong to him and in fact belonged to someone else. It is undisputed that the Trust made a claim under the Stop Loss Policy for reimbursement of medical expenses paid on behalf of Participant X. The legal issue before the Court is whether that claim is covered under the Stop Loss Policy.

**SUN LIFE'S RESPONSES TO PLAINTIFFS' ADDITIONAL STATEMENT OF UNCONTROVERTED FACTS**

| Claim For Relief No. | Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Additional Fact 32: On November 10, 2011, Sun Life ran an Accurint Report on Participant X ("the Accurint Report). The Accurint Report contained the following disclaimer:<br><br>"Important: The Public Records and Commercially available data sources used in this system have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect."<br><br>Rollinson Aff., Ex. H. | Undisputed. |

| Claim For Relief No. | Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Additional Fact 33. In December 2011, Sun Life denied the Plan's claims based on the Accurint Report. Sun Life stated:<br><br>"In the absence of a valid Social Security number, this person may not be considered a lawful employee under the US employment laws and Immigration Act . . . This is relevant because the Stop Loss Policy (refer to the Schedule of Benefits and definition of Covered Units), The Bay Area Roofers Health and Welfare Plan and the Trust Agreement all make reference to the term 'Employee'. Where the term is not defined in the policy, the courts will look to Federal common law or other applicable sources to interpret the term 'Employee.'"<br><br>Barrett Dec., ¶ 9 and Ex. C (Letter); Callahan Dec., ¶ 11. | Undisputed that the letter contains the language quoted but Sun Life disputes the Plaintiff's characterization of same. The complete letter speaks for itself. |
| | Additional Fact 34. In its December 2011 denial letter, Sun Life summarily concluded that it was "unable to provide reimbursement of this claim in the absence of documentation that [Participant X] is a lawful employee in accordance with the Employment and Immigration laws of the United States."<br><br>Callahan Dec., ¶ 13, Barrett Dec., ¶9, Ex. C (Letter), pp. 1- 3. | Undisputed that the letter contains the language quoted but Sun Life disputes Plaintiff's characterization of same. The complete letter speaks for itself. |
| | Additional Fact 35. By letter of January 25, 2012, the Trust advised Sun Life that the SSN on Participant X's I-9 form was the same number under which his payroll, health & welfare and pension contributions were being reported. In addition, the Trust provided Sun Life with two other unique identifying numbers for Participant X that the Trust used to track claims and eligibility. | Undisputed that the Trust communicated with Sun Life by letter dated January 25, 2012, which speaks for itself. Ex. P to Rollinson Aff. Undisputed that the Trustees did not explain how the "optional unique identifier numbers" set forth, constituted any evidence that the SSN provided by Participant X was his own. *Id.* |

| Claim For Relief No. | Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Rollinson Ex. P | |
| | Additional Fact 36. In April 2012, Sun Life's claims adjuster began the process of verifying Participant X's SSN with the Social Security Administration by calling the SSA to find out which consent form to use. Sun Life falsely stated to SSA that it was the insurer of Participant X's employer.<br><br>Rollinson Aff., Ex. M. | Undisputed that Ex. M to the Rollinson Aff. is an email by Rachel Cohen reflecting a telephone call with the SSA which states, in part: "I explained that we were attempting to verify a SSN of a person whose employer we insured." Sun Life disputes that the email supports the statement that this communication "began the process . . ." or that Sun Life made any "false" statements to the SSA." Ex. M. to Rollinson Aff. |
| | Additional Fact 37. In October 2012, Sun Life received a response from the SSA of a Social Security Number mismatch, stating that the SSN "doesn't belong to [Participant X]." Rollinson Aff., Ex. O. | Undisputed that the SSA specifically responded to Sun Life's inquiry, pursuant to an authorization signed by Participant X, that the "SSN doesn't belong to [Participant X]." Disputed that the specific response says anything about a SSN "mis-match" or that it contains any of the qualifying language the Trustees contend is usually associated with a "mis-match." Ex. O to Rollinson Aff. |
| | Additional Fact 38. The SSA's Social Security Number Verification Service (SSNVS) Handbook advises that if an employee's name and SSN do not match social security's records, that does not mean that the employee provided incorrect information or has any particular immigration status:<br><br>"SSA returns all names and SSNs submitted. If the name and SSN does not match our records, SSA advises the following:<br><br>• This response does not imply that you or your employee intentionally provided incorrect Information about the employee's name or SSN.<br>• This response does not make any statement about your employee's immigration status. | Undisputed that the SSNVS Handbook includes the quoted phrase but it is also undisputed that Sun Life did not use the "Social Security Number Verification Service." It is further undisputed that the communication Sun Life received from the SSA included none of the language quoted by Plaintiff, which the SSA apparently uses when employers utilize the Verification Service. See Exs. M, N and O to Rollinson Aff. |

| Claim For Relief No. | Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
| --- | --- | --- |
| | • This response is not a basis, in and of itself, to take any adverse action against the employee, such as laying off, suspending, firing or discriminating against the employee.<br><br>NOTE: If you rely only on the verification information SSA provides to justify adverse action against a worker, you may violate State or Federal law and be subject to legal consequences."<br><br>SSNVS Handbook, pp. 5-6. 5/30/14 Bevington Dec., Ex. A, pp. 5-6. | |
| | Additional Fact 39. One reason that a SSN may fail to verify is if the name does not match. SSNVS Handbook, p. 24. In a case where an employee's SSN fails to verify, the handbook states that, "[i]f the employee is unable to provide a valid SSN, you are encouraged to document your efforts to obtain the correct information. (Documentation should be retained with payroll records for a period of three (3) years.)." SSNVS Handbook, p. 27. Again, the handbook makes clear that a mismatch cannot support any inference about the employee's immigration status or justify any adverse employment action. SSNVS Handbook, p. 28.<br><br>5/30/14 Bevington Dec., Ex. A, pp. 24, 27-28. | Undisputed that the Handbook includes the quoted language but it is also undisputed that Sun Life did not use the "Social Security Number Verification Service" and that Sun Life is not Participant X's employer and took no adverse employment action against Participant X. See Ex. M to Rollinson Aff. To the extent Plaintiff intends the statement to support an inference that the information obtained by Sun Life was insufficient to support the claims decision it made, Sun Life disputes the statement as not supported by the record citation. See Exs. H, I, M, N and O to Rollinson Aff. |
| | Additional Fact 40. Sun Life received a copy of Participant X's Permanent Resident Card (Green Card).<br><br>Rollinson Aff., Ex. H, p. 2. | Undisputed. |
| | Additional Fact 41: Sun Life refused to meet with Participant X.<br><br>Rollinson Aff., Ex. S, p. 3. | Undisputed that Sun Life declined the Trustee's suggestion that Sun Life send a representative to meet in person with Participant X, stating that "it would not be arranging a meeting with [Participant X] |

| Claim For Relief No. | Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | in person, as it was attempting to confirm the SSN directly with the SSA." Ex. S to Rollinson Aff. Sun Life disputes that the record citation supports the statement that Sun Life "refused" to meet with him. |
| | Additional Fact 42: Sun Life refused to inquire with DHS or INS about participant X's status.<br><br>Rollinson Aff., Ex. S, p. 5. | Disputed. The record citation does not support the statement. To the contrary, the record, at the cited page states: "I advised you that if there was any information that you wished to submit in support of [the Trustees'] second appeal from either of those sources, Sun Life would review it." |
| | Additional Fact 43: Sun Life concluded that Participant X was not a lawful employee based solely on the SSN discrepancy.<br><br>Rollinson Aff., Ex. S, p. 5. | Disputed. The record citation does not support the statement. In the cited letter, Ms. Cohen recites in detail all of the bases for Sun Life's determination, including the specific statement from SSA that the SSN does not belong to Participant X. Ex. S to Rollinson Aff. pp. 1-8, p. 5; Exs. H, I, M, N, O to Rollinson Aff. |
| | Additional Fact 44: The Trust's Joint Board of Trustees construes the term "employee," as used in the Plan, to include any employee regardless of immigration status.<br><br>Declaration of William D. Callahan, Dkt #35, ¶ 19. | Undisputed that the Trustees have taken that position in response to Sun Life's claim determination and in this litigation. Sun Life disputes that the record citation supports the statement to the extent it implies that the Trustees actually exercised discretion to make such a determination at any time before the dispute with Sun Life arose. |
| | Additional Fact 45: The Joint Board does not interpret the Plan to impose any eligibility requirements other than those expressly stated in the Plan, and those eligibility requirements do not include any particular immigration status.<br><br>Callahan Dec., Dkt #35, ¶ 20. | Undisputed that the Trustees have taken that position in response to Sun Life's claim determination and in this litigation. Sun Life disputes that the record citation supports the statement to the extent it implies that the Trustees actually exercised discretion to make such a determination at any time before the dispute with Sun Life arose. |
| | Additional Fact 46: The Policy provides: "This Policy is delivered in California and is subject to the laws of that jurisdiction."<br><br>Rollinson Aff., Ex. B, p. 1. | Undisputed. |
| | Additional Fact 47: The Board of | Undisputed that the Trustees' powers with |

| Claim For Relief No. | Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Trustees has the power to establish the benefits to be provided under the Plan, the eligibility requirements therefor, and all other matters appropriate to the Plan.<br><br>Trust Agrt, Art. VI.B., Callahan Dec., ¶ 3 and Ex. A, p. 18. | respect to the Plan are set forth in the Trust Agreement, which speaks for itself. Disputed that anything in the Callahan Declaration has any impact on the Trustee's powers. The Callahan Declaration is not admissible evidence on this point. Disputed to the extent the statement is meant to imply that the Trustees have the power to dictate the claims Sun Life must pay under the Stop-Loss policy. See Ex. B. to Rollinson Aff. at 1, 14, 18. |
| | Additional Fact 48: The Joint Board has the exclusive authority to control and manage the operation of the Trust and its assets, and may exercise all lawful powers appropriate to the exercise of its authority, including the power to determine all questions relating to eligibility for benefits and how they will be provided. The Joint Board's decisions on such questions are binding on all persons to the fullest extent permitted by law.<br><br>Trust Agreement, Arts. IV.G., VI.A.-B., Callahan Dec., ¶ 3 and Ex. A, pp. 32, 38, and Callahan Dec., ¶ 4. | Undisputed that the Trustees' powers with respect to the Plan are set forth in the Trust Agreement, which speaks for itself. Disputed that anything in the Callahan Declaration has any impact on the Trustee's powers. The Callahan Declaration is not admissible evidence on this point. Disputed to the extent the statement is meant to imply that the Trustees have the power to dictate the claims Sun Life must pay under the Stop-Loss policy. See Ex. B. to Rollinson Aff. at 1, 14, 18. |

DATED: June 20, 2014.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

PIERCE ATWOOD LLP

By: */s/ Sean P. Nalty*
Sean P. Nalty
Byrne J. Decker, *Pro Hac Vice*

Attorneys for Defendant SUN LIFE ASSURANCE COMPANY OF CANADA

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2014, I electronically filed the within document using the CM/ECF system which will send notification of such filing(s) to the following:

Richard C. Johnson (SBN 40881)
Anne M. Bevington (SBN 111320)
Shivani Nanda (SBN 253891)
SALTZMAN & JOHNSON LAW CORPORATION
44 Montgomery Street, Suite 2110
San Francisco, CA 94104
Telephone: (415) 882-7900
Facsimile: (415) 882-9287
Email: djohnson@sjiawcorp.com
abevington@sjlawcorp.com
snanda@sjlawcorp.com

Dated: June 20, 2014

*<u>/s/ Sean P. Nalty</u>*
Sean P. Nalty

17903958.1