1

2

3          **UNITED STATES DISTRICT COURT**

4          **NORTHERN DISTRICT OF CALIFORNIA**

5          **SAN JOSE DIVISION**

6

7   BAY AREA ROOFERS HEALTH AND
    WELFARE TRUST, et al.,                    Case No.  13-cv-04192-BLF

8                      Plaintiffs,

9          v.                                 **ORDER**
                                              **(1) GRANTING IN PART AND**
10  SUN LIFE ASSURANCE COMPANY OF             **DENYING IN PART DEFENDANT'S**
    CANADA,                                   **MOTION FOR SUMMARY JUDGMENT**
                                              **(2) GRANTING PLAINTIFFS' MOTION**
11                     Defendant.             **FOR PARTIAL SUMMARY**
                                              **JUDGMENT**
12

13

14          This case involves interpretation of provisions of a stop-loss insurance policy issued by

15  Defendant Sun Life Assurance Company of Canada ("Sun Life") regarding the scope of its

16  contractual obligation to reimburse Plaintiff Bay Area Roofers Health and Welfare Trust ("the

17  Trust") for claims paid on behalf of a worker's minor children for medical care. Sun Life asserts

18  that coverage is precluded because the worker obtained his employment by fraud through

19  submission of a false Social Security Number ("SSN"). The Trust asserts that it determined that

20  the worker was an eligible employee under the Health and Welfare Plan and thus, as required by

21  the Policy, Sun Life is contractually obligated to reimburse it for its claims. Cross-motions for

22  summary judgment are presently before the Court.

23          Plaintiffs are a Trust created for the purpose of providing health care benefits for

24  employees and their dependents in the roofing industry, and two of its Trustees. The Trust

25  purchased a stop-loss insurance policy ("the Policy") from Sun Life in order to mitigate costs

26  related to large health care expenses that would otherwise fall upon the Trust's self-funded Health

27  and Welfare Plan ("the Plan"). In 2011, the third-party administrator of the Plan submitted

28  reimbursement claims to Sun Life under the Policy for medical expenses paid out by the Plan for

newborn twin dependents of a Plan participant, Participant X.[1] The twins were born prematurely and accrued substantial medical expenses for their treatment.

Defendant Sun Life is an insurance company that offers, among other plans and policies, stop-loss insurance policies that provide reimbursement to self-funded employee benefit plans for covered medical expenses incurred by employees. Upon receipt of Plaintiffs' claims and its own investigation, Sun Life denied the Trust's claims based on its determination that Participant X was not a covered "employee" for purposes of the Policy coverage because Participant X lacked a valid Social Security Number. Sun Life claims that the absence of a valid SSN means that Participant X obtained his employment by fraud and was not authorized to work in the United States, thus precluding him from being an "employee" for purposes of insurance coverage under the Policy. Following Sun Life's denial of Plaintiffs' claims, and two unsuccessful internal appeals of that denial, Plaintiffs brought suit.

After reviewing the parties' papers, evidence, and oral argument, as well as the governing law, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion for Summary Judgment, and GRANTS Plaintiffs' Motion for Partial Summary Judgment.

## I.     BACKGROUND

### A.     Procedural History

Plaintiffs filed their Complaint on September 10, 2013, alleging four causes of action, including breach of contract, breach of the covenant of good faith and fair dealing, and violations of California Business and Professions Code §§ 17200 *et seq.* and the Employee Retirement Income Security Act ("ERISA") § 502(a)(3)(B)(ii). Defendant answered on October 18, 2013, and after Plaintiffs filed a successful Motion to Strike, filed an Amended Answer on January 6, 2014.

On April 17, 2014, this case was reassigned to the undersigned. On April 25, 2014, the parties filed their cross-motions for summary judgment. Following briefing, the Court heard oral argument on August 7, 2014.

---

[1] For confidentiality purposes, both Plaintiffs and Defendant use the designation "Participant X" in their briefing, and the Court shall do the same throughout this Order.

1

**B.      Undisputed Facts**

2          The Trust is a multiemployer Taft-Hartley Trust, created to provide employee benefits,

3   including healthcare benefits and life insurance, for employees and their dependents covered by

4   collective bargaining agreements in the roofing industry in the Bay Area. *See* Callahan Decl. ¶¶ 1,

5   3; *see also id.* Exh. A at 21 (Article I of the Trust Agreement). The Plan, which is self-funded, *id.*

6   at ¶ 5, is administered by a Joint Board which includes equal representation from labor and

7   management, and which has the exclusive authority to manage the operations of the Trust and its

8   assets. *Id.* Exh. A at 22, 38-41.

9          The Joint Board, in order to mitigate the effects of large health claims due to the self-

10  funded nature of the Plan, purchased the Policy from Sun Life in August 2009, and renewed the

11  Policy on August 1, 2010 and August 1, 2011. *See* Callahan Decl. ¶ 6. Upon renewal in 2010, and

12  thereafter, the Policy's deductible was $150,000. *Id.* at ¶ 7, Exh. B p. 24. The Trust provided

13  Defendant with data regarding its past health insurance claim history, and also provided Defendant

14  with a de-identified census, which included, among other information, the age, zip code, and

15  number of dependents of each Plan participant. Barrett Decl. ¶ 5. Every month, to continue

16  receiving coverage under the Policy, the Trust provided a head count of total Plan participants. *Id.*

17  at ¶ 6. The Trust is not the employer of any of its covered employees.

18         The Policy includes two provisions regarding the obligations of the insurer to make a

19  reimbursement to the Plan:

20                 This is a reimbursement policy. You, or your Plan administrator, are
                   responsible for making benefit determinations under Your Plan. We
21                 have no duty or authority to administer, settle, adjust, or provide
                   advice regarding claims filed under Your Plan.
22

23                 . . .

24                 We have the right to require documentation from You that
                   demonstrates You paid an Eligible Expense and that payment was
25                 made in accordance with the terms of your Plan. . . . For the purpose
                   of determining Eligible Expenses under this Policy, We have the
26                 right to determine whether an expense was Paid by You in
                   accordance with the terms of Your Plan.

27  Rollinson Aff., Exh. B. at 1, 18.

28         In May 2011, Participant X, a Plan participant, timely enrolled his newborn twins in the

United States District Court
Northern District of California

3

1   Plan. Barrett Decl. ¶ 7. The twins, who are citizens of the United States, were born prematurely,

2   and incurred substantial medical expenses, with the Trust paying over $250,000 for Twin A's

3   medical treatment and over $450,000 for Twin B's medical treatment. *Id.*

4       In November 2011, the Plan's third-party administrator, United Administrative Services

5   ("UAS"), submitted claims to Sun Life seeking reimbursement for the medical expenses greater

6   than the $150,000 deductible per dependent. Barrett Decl. ¶ 8, Exh. B at 1-4. Later, in August

7   2012, UAS submitted a subsequent reimbursement claim for additional expenses paid out by the

8   Plan for additional treatment for Twin B. In total, the Plan sought reimbursement from Sun Life in

9   the amount of $408,841.59. *Id.* ¶¶ 7-8, Exh. B. at 3-6.

10      The Plan's claim forms, submitted to Sun Life, included Participant X's name and a Social

11  Security Number, which ended in "0724." Rollinson Aff. ¶ 7, Exhs. D, E. Following receipt of the

12  claim forms, Sun Life requested additional information from Plaintiffs, including Participant X's

13  original Plan enrollment form, *see* Barrett Decl. ¶ 11; on his enrollment form, Participant X

14  included the same SSN ending in "0724," Rollinson Aff. ¶ 9, Exh. F.

15      After receiving this information from the Trust, Sun Life cross-checked this SSN with a

16  database called Accurint.[2]  Rollinson Aff. ¶ 13, Exh. H. The Accurint report showed that the SSN

17  ending in "0724," provided by Participant X, did not belong to him; upon double-checking the

18  accuracy of this readout, Accurint informed Sun Life that the 0724 SSN "is properly linked to

19  another consumer, not [Participant X]." Rollinson Aff. ¶ 15, Exh. I. In December 2011, Sun Life

20  denied the Trust's reimbursement claims, stating in two letters to the Trust ("Denial Letters") that:

> In the absence of a valid Social Security number, [Participant X]
> may not be considered a lawful employee under the US employment
> laws and Immigration Act. This is relevant because the Stop Loss
> Policy [], The Bay Area Roofers Health and Welfare Plan, and the
> Trust Agreement all make reference to the term 'Employee'. Where
> the term is not defined in the policy, the courts will look to Federal
> common law or other applicable sources to interpret the term
> 'Employee.'

----

[2] Accurint reports contain the following disclaimer: "The Public Records and Commercially available data sources used in this system have errors. Data is sometimes entered poorly, processed incorrectly, and is generally not free from defect." Rollinson Aff., Exh. H.

4

. . .

>[Defendant is] unable to provide reimbursement of this claim in the absence of documentation that [Participant X] is a lawful employee in accordance with the Employment and Immigration laws of the United States.

Barrett Decl. ¶ 9, Exh. C at 1, 3.

In January 2012, the Plan, through UAS, appealed Sun Life's denials.[3] Barrett Decl. ¶ 10, Exh. D. As a part of this appeal, UAS provided Participant X's I-9 form, which Participant X submitted in order to obtain his employment, as well as his Social Security Card and Permanent Resident Card. Callahan Decl. ¶ 14; *see also* Rollinson Aff. ¶ 14, Exh H. at 2. The I-9 form included the same 0724 SSN as the claim and enrollment forms.[4] Rollinson Aff. ¶ 16, Exh. J. Sun Life ultimately requested Participant X's W-2 form, which the Plan provided. Barrett Decl. ¶ 11, Exh. E; *see also* Callahan Decl. ¶ 15. Following receipt of this information, in April 2012, Sun Life attempted to verify Participant X's SSN with the Social Security Administration ("SSA"). Rollinson Aff. ¶ 18. In October 2012, Sun Life received a response from the SSA which stated that "[t]he Social Security Number you provided [to SSA] doesn't belong to [Participant X]." Rollinson Aff. ¶ 18, Exh. O.

On December 21, 2012, Sun Life denied the Plan's appeal of the first reimbursement denial. Barrett Decl. ¶ 14, Exh. G. On February 14, 2013, the Plan requested a second appeal. Bevington Decl., ECF 37 ¶ 3, Exh. B. On May 3, 2013, Sun Life once again denied the Plan's appeal, confirming the denial of reimbursement. *Id.* ¶ 4, Exh. C.

After denying reimbursement, Sun Life sent UAS a check for $2,721.26, which represented a refund of the amount paid in premiums by the Plan for coverage related to Participant X. Barrett Decl. ¶ 18, Exh. H. On July 18, 2013, the Plan, through counsel, rejected this refund check and returned it to Sun Life. Bevington Decl., ECF 37 ¶ 5, Exh. D. Then, on

---

[3] The Plan further challenged this denial via a letter from legal counsel on May 30, 2012, in which counsel for the Plan argued that Participant X was an "Employee" and "Covered Person" under the terms of the stop-loss Policy. Bevington Decl., ECF 37 ¶ 2, Exh. A.

[4] Defendant also requested Participant X's tax returns from the Trust, but the Trust refused to provide Defendant with this information. Rollinson Aff. ¶ 17, Exhs. K, L.

September 10, 2013, the Trust and two of its trustees filed suit.

### C.    Evidentiary Objections

Defendant makes evidentiary objections to five paragraphs in the Declaration of William Callahan, filed with Plaintiffs' Motion for Partial Summary Judgment. *See* Callahan Decl., ECF 35. Defendant objects to: (1) paragraph 8 as irrelevant parol evidence, pursuant to Federal Rule of Evidence 401; (2) paragraph 9 as irrelevant; (3) paragraphs 13, 15, and 17 as the irrelevant opinion of a lay witness, pursuant to Federal Rules of Evidence 401 and 701; and (4) paragraph 15 for lacking foundation.

As to paragraph 8, the Court SUSTAINS the objection as to the first sentence. The Policy language itself will be considered by the Court. As to paragraphs 9, 13, 15, and 17, the Court OVERRULES the objections on relevance grounds, and will give the statements the weight they deserve. However, the Court SUSTAINS Defendant's objection to paragraph 13 as to the use of "arbitrarily" and "summarily concluding," but OVERRULES its objection as to the remainder of the paragraph. The Court OVERRULES Defendant's lack of foundation objection to paragraph 15.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The Court draws all reasonable inferences in favor of the party against whom summary judgment is sought. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court

6

United States District Court
Northern District of California

the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In order to meet its burden, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal. 1995) (citing *T.W. Elec. Serv., Inc.*, 809 F.2d 626, 630).

A material fact is one that could affect the outcome of suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009). The court "determines whether the non-moving party's specific facts, coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party." *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008) (citing *T.W. Elec. Serv., Inc.*, 809 F.2d 626, 631). If the Court finds that a reasonable jury could find for the non-moving party, summary judgment is inappropriate. *See, e.g.*, *Anderson*, 477 U.S. 242, 248. Conclusory and speculative testimony, however, is insufficient to defeat summary judgment. *See, e.g.*, *Soremekum v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

The filing of cross-motions for summary judgment or partial summary judgment does not mean that the material facts are undisputed, and the denial of one motion does not necessarily require the granting of the other. *See, e.g.*, *Regents of Univ. of Calif. v. Micro Therapeutics, Inc.*, 507 F. Supp. 2d 1074, 1077-78 (N.D. Cal. 2007) (citing *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1147 (10th Cir. 2000). The motions are to be evaluated in accordance

United States District Court
Northern District of California

with the requisite burden of proof facing each party. *Id.* at 1078.

**III.   DISCUSSION**

Sun Life seeks summary judgment as to the entirety of the action, and partial summary judgment as to five discrete issues, set forth in Defendant's Motion for Summary Judgment. *See* ECF 33. Plaintiffs seek partial summary judgment as to the second cause of action, for breach of contract, as set forth in their own Motion for Partial Summary Judgment. *See* ECF 34. The Court first considers the parties' cross-motions as to the breach of contract cause of action, and DENIES Defendant's Motion for Partial Summary Judgment and GRANTS Plaintiffs' Cross-Motion as to this cause of action. Then, the Court considers Defendant's Motion as to the remaining four issues, which the Court GRANTS IN PART AND DENIES IN PART.

**A.   The Breach of Contract Cause of Action**

Both parties contend they are entitled to summary judgment on Plaintiffs' second cause of action for breach of contract. As described above, the material facts are undisputed. The parties agreed that the outcome of this cause of action is dependent on the Court's interpretation of the term "employee" in both the Policy and the Plan. This being the case, and the parties' cross-motions being a mirror image of each other on the breach of contract question, the Court addresses the cross-motions together.

To prove a cause of action for breach of contract under California law, a party must plead the existence of a contract, plaintiff's performance of that contract or excuse for failure to perform, defendant's breach, and damage to plaintiff resulting therefrom. *See McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) (citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570). Interpretation of the terms of a contract is a question of law to be determined by the Court. *See, e.g.*, *TRB Investments, Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006).

Framed as Issue 2 in its Motion, Sun Life contends that "Plaintiffs' second claim for relief, for Breach of Contract, has no merit as a matter of law because Sun Life's decision to deny plaintiffs' claim for benefits under the Policy was correct and no benefits are owed under the Policy based on the Claim." See Def.'s Mot., ECF 33 at 1. In support of this contention, Sun Life

8

1    argues that Participant X obtained his employment fraudulently by submitting a false SSN, and

2    thus was not eligible to be employed in the United States. Def.'s Br., ECF 33-1 at 6. Sun Life

3    further argues that under the express terms of the Policy it had the right to independently

4    investigate whether coverage existed under the Policy, which, in turn, required a determination as

5    to whether the Trust paid claims in accordance with the terms of the Trust's Plan. Sun Life's

6    denials of Plaintiffs' claims were based on Plaintiffs' failure to establish, in a manner satisfactory

7    to Sun Life, that Participant X was an "employee." Relying on the provisions of the Immigration

8    Reform and Control Act, or IRCA, and a case from the Eastern District of Texas, *Garcia v.*

9    *American United Life Insurance Co.*, 2009 WL 6327459, at *10 (E.D. Tex. Dec. 9, 2009) (Report

10   and Recom.) (*Garcia I*), *adopted by* 2010 WL 1379106 (E.D. Tex. Mar. 31, 2010) (*Garcia II*),

11   Sun Life argues that as a matter of law Plaintiffs are not entitled to reimbursement for their claims.

12       In contrast, Plaintiffs argue that they are entitled to "partial summary judgment on their

13   breach of contract claim." Pls.' Mot., ECF 34 at 13. Plaintiffs contend that Participant X, and his

14   twins, met the eligibility requirements to be covered under the Trust Plan, and that, as a matter of

15   law, Participant X was an "employee" under California law, for purposes of receiving health care

16   benefits under the Plan, "regardless of his immigration status." *See id.* at 14. Citing a variety of

17   California and federal statutes, as well as cases interpreting those statutes, Plaintiffs insist that

18   Participant X is an "employee" no matter his legal immigration status. Plaintiffs further argue that,

19   even if the Court disagrees with this legal argument, that Defendant has not met its burden to show

20   that Participant X was not authorized to work in the United States simply by virtue of his use of an

21   SSN that did not belong to him.[5]

22       It is undisputed that the SSN provided by Participant X did not belong to him. Sun Life

23   obtained sufficient verification of this fact directly from the Social Security Administration and

24   Plaintiffs do not dispute this evidence. That being said, the undisputed evidence further establishes

25   that Participant X also presented to his employer a facially valid Permanent Resident Card. *See,*

27   ────────────────
     [5] For purposes of Plaintiffs' cross-motion for summary judgment on the breach of contract claim,
28   the Court, in making every necessary inference in favor of Defendant, will consider Participant X
     to be an undocumented worker. *See First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp.
     510, 513–14 (N.D. Cal. 1995).

United States District Court
Northern District of California

*e.g.*, Rollinson Decl., Exh. H. Further, neither the Policy nor the Trust Plan documents define the term "employee," and the Policy does not contain an express exclusion of benefits relating to undocumented workers, or workers who do not present valid SSNs to their employers. *See* Compl. Exh. A at 29-30 ("Benefit Provisions Limitations and Exclusions"). Against this backdrop, the Court reviews the applicable law.

In the first instance, the Court is called upon to interpret the Stop-Loss Policy. Interpretation of an insurance policy is a question of law, and such policies are to be interpreted under the general rules of contract interpretation. *TRB Investments, Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006). The Policy expressly provides that "[t]his Policy is delivered in California and is subject to the laws of that jurisdiction." Compl., Exh. A at 1. Under California law, the Court's interpretation "must give effect to the 'mutual intention' of the parties" that was formed at the time the contract was entered into. *Id.*; *see also* Cal. Civ. Code § 1636. The Court looks first to the written provisions of the contract itself, *id.* at § 1639, and interprets the words in the contract in their "ordinary and popular sense," unless the parties use the terms in a technical sense, or give them a special meaning. *Id.* at § 1644. Insurance contracts are construed "so as to afford the greatest possible protection to the insured," *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 648 (2003), but "courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 16 (1995).

In order to determine whether Sun Life properly denied the Trust's claims, the Court thus first looks to the language of the Policy itself. The Policy's "Definitions" section does not explicitly define "Employee," however, it does define "Covered Person," which includes "[a] person enrolled in Your Plan and entitled to receive benefits under Your Plan while this Policy is in force," and "Covered Units," which includes "Single Employee, Employee and Family." Compl. Exh. A at 4, 5. The parties do not dispute that the Trust Plan provides coverage only for employees and employee dependents and spouses. *See* Compl., Exh. B at 6 (defining the "Eligibility Rules" under the Plan for "Contractual and Non-Contractual Active Employees," which, for contractual employees states "[s]ubject to the rules set forth below, each contractual

10

1    employee working in employment covered by a collective bargaining agreement with a

2    Participating Union is eligible on the first day of the second calendar month following the month

3    for which the individual has accrued 440 units").

4         Sun Life contends that, as a matter of law, "employee" as used in the insurance contract

5    *can only mean* a person who is eligible to be employed legally in the United States as defined by

6    federal immigration law, arguing that "[c]ommon sense dictates that the term 'employee' in its

7    'ordinary and popular sense' in this context, does not include individuals who cannot, under

8    federal law, legally become 'employed' in the first place but who nonetheless submit fraudulent

9    documentation in an effort to subvert U.S. law." Def.'s Br., ECF 33-1 at 6-7.

10        In support of its position, Sun Life relies heavily on a Texas case, *Garcia v. American*

11   *United Life Insurance Co.*, in which a magistrate judge issued a Report and Recommendation,

12   ultimately upheld by a district judge and affirmed by the Fifth Circuit,[6] which found as "legally

13   correct" an insurer's determination that the spouse of an undocumented worker, who had

14   unlawfully used an SSN that did not belong to him in order to obtain employment, was not entitled

15   to receive the worker's death benefits under his employer's group life insurance policy because the

16   worker's undocumented status meant that he could not be an "employee." *See Garcia v. Am.*

17   *United Life Ins. Co.*, 2009 WL 6327459, at *10 (E.D. Tex. Dec. 9, 2009) (Report and Recom.)

18   (*Garcia I*), *adopted by* 2010 WL 1379106 (E.D. Tex. Mar. 31, 2010) (*Garcia II*).

19        In *Garcia I*, the magistrate judge found that the decedent, Salvador, made a material

20   misrepresentation directly to the insurance company when he signed a Group Enrollment Form

21   that requested life insurance coverage under the group insurance policy of his employer. *Garcia I*

22   at *2. The judge found that Salvador included on that form a Social Security Number that did not

23   belong to him. *Id.* at *3. After Salvador's death in a car accident, the insurance company denied a

24   life insurance claim on behalf of his widow, stating in part the "[n]o information has been

25   submitted showing Salvador [] completed his 9/2/05 insurance application truthfully." *Id.* at *4.

26

27   ─────────────────────
     [6] The Court notes that the Fifth Circuit, pursuant to Fifth Circuit Rule 47.5, stated in its *Garcia*
28   opinion that "this opinion should not be published and is not precedent except under the limited
     circumstances set forth in 5th CIR.R. 47.5.4." *Garcia*, 422 Fed. App'x 306, 307 n.* (2011).

United States District Court
Northern District of California

1   The *Garcia I* court found that, to be eligible under his employer's plan, Salvador "must have been

2   an employee," and that defendant's determination, after investigation, that Salvador was not

3   eligible for employment in the United States, and his widow's "fail[ure] to provide information

4   establishing or indicating that Salvador was a legal resident or authorized to work in this country,"

5   meant that he was not "lawfully employed" by his employer, and that a denial of benefits was

6   proper. *Id.* at *9-10. The district court, in adopting the magistrate judge's Report and

7   Recommendation, found that "eligibility for employment under the U.S. immigration laws would

8   be material to any plan," that the magistrate judge's "thorough review result[ed] in a finding that

9   Mr. Garcia made a fraudulent statement at the time he signed up" for insurance, and that Mr.

10  Garcia's "undocumented status prevent[ed] him from legally obtaining employment." 2010 WL

11  1379106, at *5 (E.D. Tex. Mar. 31, 2010). The Fifth Circuit affirmed, finding that federal law

12  applied to the action, 422 Fed. App'x 306, 309 (5th Cir. 2011), and that "the administrator's

13  decision [in denying the claim] was legally correct *because a reasonable and fair reading of the*

14  *policy indicates that Salvador made a material misrepresentation [to the insurer] warranting*

15  *rescission and denial.*" *Id.* at 311 (emphasis added).

16      As explained in greater detail below, the Court finds *Garcia* inapplicable and

17  unpersuasive, and holds that the word "employee" in this insurance contract for health care

18  benefits – when interpreting the contract, as the Court must, under the laws of California – does

19  not by law preclude the inclusion of workers who do not have SSNs,[7] and, to the contrary, requires

20  the inclusion of undocumented workers for purposes of receiving health care benefits,.

21          *1.    Federal Law and IRCA*

22      In 1986, Congress enacted the Immigration Reform and Control Act, or IRCA, which

23  created a comprehensive regulatory scheme to prohibit the employment of undocumented

24

25  ---
    [7] The Court further distinguishes *Garcia* on the basis that the Fifth Circuit upheld the lower
26  court's ruling on the narrow ground that the worker submitted a fraudulent document *directly to*
    *the insurer*, thus supporting the insurer's decision to rescind the contract and deny benefits to the
27  worker's spouse. *See* 422 Fed. App'x 306, 311. Additionally, the *Garcia* case is not precedent in
    this Circuit, and is, for the most part, not even precedential in the Fifth Circuit, as the court there
28  stated that "this opinion should not be published and is not precedent except under the limited
    circumstances set forth in 5th Cir. R[ule] 47.5.4." *Id.* at 309 n.*.

immigrants in the United States. The Supreme Court has described the purpose of IRCA as "forcefully [making] combating the employment of illegal aliens central to the policy of immigration law." *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147 (2002) (citing *INS v. Nat'l Center for Immigrants' Rights*, 502 U.S. 183, 194 (1991)). IRCA places the onus on employers to verify the identity and eligibility of all newly hired employees, by examining specific documents before they begin employment, which can include a resident alien card. *See* 8 U.S.C. § 1324a(b)(ii). The Supreme Court has found that:

> Under the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies.   Either   the undocumented   alien   tenders   fraudulent   identification,   which subverts the cornerstone of IRCA's enforcement mechanism, or the employer   knowingly   hires   the   undocumented   alien   in   direct contradiction of its IRCA obligations.

*Hoffman Plastics*, 535 U.S 137, 148 (holding that awarding backpay to an undocumented worker "runs counter to policies underlying" IRCA, because the wages could not lawfully have been earned).

### 2.   *California Law*

Following *Hoffman Plastics*, the California Legislature passed a law, Senate Bill 1818, which, among other things, amended the California Government Code to state:

> (a) All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state.

Cal. Gov't Code § 7285; *see also* Cal. Civ. Code §3339.

A 2014 decision of the California Supreme Court, decided after briefing in this case was completed, upheld Senate Bill 1818, finding that IRCA and federal immigration law did not preempt Senate Bill 1818, except to the extent that federal law preempted back pay awards, and found that "Senate Bill No. 1818 expressly makes the worker protection provisions of state employment and labor laws available to all workers 'regardless of immigration status.'" *Salas v. Sierra Chemical Co.*, 59 Cal. 4th 407, 426 (2014).

In *Salas*, the plaintiff sued his former employer under the California Fair Employment and

United States District Court
Northern District of California

1   Housing Act ("FEHA"), Gov't Code §§ 12900 *et seq.*, alleging disability discrimination and

2   retaliation. After the suit was filed, the employer learned that the plaintiff, in order to gain

3   employment, may have submitted another person's SSN as his own. In determining that under

4   California law an undocumented worker is entitled to the protections afforded by the

5   antidiscrimination provisions of FEHA, the California Supreme Court held that the United States

6   Supreme Court's ruling in *Hoffman Plastics* was not controlling, because in *Hoffman Plastics* the

7   Supreme Court declined to decide the issue of state law preemption, deciding instead the

8   appropriate reach of federal immigration law over a federal agency's authority to award a remedy

9   for violations of federal law. Distinguishing *Hoffman Plastics* in this way, the California Supreme

10  Court held that federal immigration law did not preempt a state antidiscrimination law enforced

11  through a private action for damages. *See Salas*, 59 Cal. 4th 407, 420.

12          The California Supreme Court also determined in *Salas* that nothing in *Arizona v. United*

13  *States*, 132 S. Ct. 2492 (2012), requires a contrary conclusion, as is argued by Sun Life in its

14  briefing. *See, e.g.*, Def.'s Br. at 12-13. In fact, the California Supreme Court has essentially

15  rejected Sun Life's argument that *Arizona* limits states, after *Hoffman Plastics*, to enacting statutes

16  granting *public* benefits to undocumented workers. Instead, the *Salas* court held that there was no

17  federal preemption of Government Code section 7285, which grants undocumented workers

18  protections, rights, and remedies available under state laws, including a *private* right of action to

19  assert antidiscrimination laws against a private employer. *See Salas*, 59 Cal. 4th 407, 421-24

20  (engaging in a detailed analysis of federal preemption as set forth in *Arizona v. United States*).

21          In its opposition to Plaintiffs' Motion, Sun Life argues that "no legislature or court ever

22  has or ever could purport to require that undocumented aliens . . . be considered 'employees' . . .

23  for the purpose of non-mandatory, contractual insurance coverage between private parties." Def.'s

24  Opp. at 13. The Court does not find this argument persuasive, as Sun Life completely ignores the

25  extensive body of California law to the contrary. First, the *Salas* court, finding no federal

26  preemption, has already upheld an undocumented worker's right to pursue remedies under FEHA

27  by applying Government Code section 7285 to the state's antidiscrimination laws. FEHA itself

28  does not extend those rights to undocumented workers, and the rights at issue in *Salas* were not

14

United States District Court
Northern District of California

1    mandated public benefits.

2         Second, and even more instructive, the Ninth Circuit has held that Civil Code section 3339

3    and Government Code section 7285 protect undocumented workers who are denied private

4    contractual employee benefits and rights. In *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005 (9th Cir.

5    2007), the Ninth Circuit considered whether an employee whose visa had terminated was entitled

6    to seek protection under his private employer's policy not to terminate employees without good

7    cause. Applying the protections of Civil Code section 3339 and Government Code section 7285,

8    the Ninth Circuit panel unanimously ruled that "California law provides remedies to workers who

9    are terminated in violation of an express or implied agreement that they will not be discharged

10   without good cause. . . . The California legislature has made clear that *this rule applies to illegal*

11   *immigrants as well as other employees*." *Id.* at 1009 (emphasis added). The Ninth Circuit further

12   determined that the California law in question was not preempted by IRCA, and that *Hoffman*

13   *Plastics* did not require a different result. *Id.* at 1013.

14        Thus, contrary to Sun Life's argument, California Government Code section 7285 makes

15   the protections and benefits offered to employees by private employers, excepting back pay,

16   equally available to undocumented workers. The holdings in both *Incalza* and *Salas* would extend

17   to require that Participant X, regardless of his immigration status, be afforded health care benefits

18   under the Trust Plan *so long as he otherwise qualified for the benefits*. The Trust made a

19   determination, when it paid for Participant X's twins' health care, that Participant X qualified as a

20   Plan participant under the terms of the Plan.[8] In making this determination, the Plan did not

21   consider Participant X's immigration status, but instead found that he had worked the requisite

22   number of hours needed to qualify for the benefits, timely enrolled his children in the Plan, sought

23   reimbursement for qualifying health care services, and submitted a proper claim. In turn, the Trust

24   submitted claims to Sun Life for reimbursement under the Policy. Sun Life's failure to pay the

25

26   _____

27   [8] Sun Life further argues that the Stop-Loss Policy does not incorporate the Plan, however, this
     argument is immaterial. The Stop-Loss Policy provides that Defendant has the authority to
     "determine whether an expense was paid by You *in accordance with the terms of Your Plan*."

28   Callahan Decl. Exh. B. at 18 (emphasis added). Thus, the only proper lens through which to view
     a denial of reimbursement by Defendant is by also examining the terms of the Trust's Plan.

1   reimbursement, under the rationale that Participant X was undocumented and thus unable to be an

2   "employee" by law, constitutes a breach of that Policy.

3          Moreover, *Salas* and *Incalza* are not unique – they are just two of many court cases, along

4   with a number of statutes, which guarantee that undocumented workers in this state are entitled to

5   certain rights and protections as employees. *See* Cal. Labor Code § 3351(a) (defining "employee"

6   for purposes of worker's compensation law as "every person in the service of an employer . . .

7   whether lawfully or unlawfully employed, and includes (1) Aliens"); Cal. Labor Code § 1171.5(a)

8   (extending all protections under state law to those who have "been employed" in this state, which

9   includes "all individuals regardless of immigration status"); *Farmers Bros. Coffee v. Workers'*

10  *Comp. Appeals Bd.*, 133 Cal. App. 4th 533, 540 (2005) (finding that this statute was not

11  preempted by IRCA); Title VII, 42 U.S.C. § 2000e(f) (defining "employee" to be any "individual

12  employed by an employer"); *E.E.O.C. v. Tortilleria La Mejor*, 758 F. Supp. 585, 590 (E.D. Cal.

13  1991) (finding that undocumented workers are protected under Title VII); *Sure-Tan, Inc. v.*

14  *N.L.R.B.*, 467 U.S. 883, 892 (1984) (holding that the National Labor Relations Act applies to

15  unfair labor practices committed against undocumented workers); *Singh v. Jutla & C.D. & R.'s*

16  *Oil, Inc.*, 214 F. Supp. 2d 1056, 1058 (N.D. Cal. 2002) (holding that the Fair Labor Standards

17  Act's anti-retaliation provisions apply to undocumented workers); *N.L.R.B. v. C & C Roofing*

18  *Supply, Inc.*, 569 F.3d 1096, 1099 (9th Cir. 2009) (finding that undocumented workers can receive

19  liquidated damages pursuant to a wrongful termination claim, and that such damages do not run

20  afoul of IRCA); *N.L.R.B. v. Kolkka*, 170 F.3d 937 (9th Cir. 1999) (finding that undocumented

21  workers have the right to vote in union elections); *Ulin v. ALAEA-72, Inc.*, 2011 WL 723617

22  (N.D. Cal. Feb. 23, 2011) (stating that IRCA's purpose "is not to prevent aliens from being

23  compensated for work already performed").

24              *3.     Determination of Contractual Rights and Obligations*

25          Having considered all of the parties' arguments regarding the interpretation of the term

26  "employee" in the Policy, under both California and federal law, the Court returns to the precepts

27  of insurance law and basic contract interpretation. The claim for breach of contract clearly

28  revolves around whether an undocumented worker is an "employee" under the Plan for purposes

United States District Court
Northern District of California

1   of eligibility for health care benefits, which in turn would entitle the Trust to reimbursement under

2   the Policy.

3        There being no definition of "employee" in the Policy, and no exclusion for coverage of

4   undocumented workers, the Court finds that the term is to be given its plain and ordinary meaning

5   under the law. *See Vandenberg v. Superior Court*, 21 Cal. 4th 815, 839-40 (1999). As expressly

6   provided in the Policy, California law is applicable in this case.

7        Under California law there is an express public policy, as enacted in a series of statutes that

8   includes Government Code section 7285, to ensure that undocumented workers in this state

9   receive all employment rights and benefits available to other workers, except back pay. As

10  discussed above, those state laws have been applied by the courts to cover the right to public

11  benefits like workers compensation, *see Farmers Bros.*, 133 Cal. App. 4th 533, the right to

12  maintain a private lawsuit for damages caused by unlawful discrimination in the workplace, *see*

13  *Salas*, 59 Cal. 4th 407, and even the right to enforce contractual employee benefits provided by an

14  employer to all employees, such as the right to a finding of good cause before termination, *see*

15  *Incalza*, 479 F.3d 1005. Nothing in the *Garcia* case relied on by Sun Life causes this Court to

16  evaluate the undisputed facts of this case differently. As discussed in detail above, the *Garcia* case

17  is unpersuasive, is not binding precedent on courts in this Circuit, and is factually distinct from

18  this case: the policy in question in *Garcia* was not subject to the laws of California, and the *Garcia*

19  court found that the worker had made a direct misrepresentation to the insurance company which

20  gave rise to rescission of the insurance contract.

21       Thus, the Court concludes that the plain and ordinary meaning of "employee" in the Plan

22  and the Policy includes undocumented workers for the purpose of receiving health care benefits.

23       Additionally, it is undisputed that the Trust performed all acts required of it under the

24  Policy in order to make claims for reimbursement, that Sun Life failed to pay those claims, and

25  that Plaintiffs have been damaged in the amount of $408,841.58 plus interest because of that

26  failure. *See McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) (outlining the

27  elements of a breach of contract claim under California law).

28       Based on the foregoing, Plaintiffs are entitled to judgment as a matter of law. The Court

17

1   GRANTS Plaintiffs' Motion for Partial Summary Judgment on Claim 2 for Breach of Contract.

2   The Court also DENIES Defendant's Motion for Partial Summary Judgment as to Claim 2. Sun

3   Life has not established as a matter of law that Participant X is not an "employee" under the

4   Policy. Even if *Garcia* were applicable – thus excluding undocumented workers from coverage –

5   there is a triable issue of material fact as to whether Participant X was legally entitled to work in

6   the United States based upon Plaintiffs' submission of the facially valid Permanent Resident Card.

7   On that basis, the Court finds that a reasonable jury could return a verdict in favor of Plaintiffs.

8   *See Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

9       **B.      The Other Issues on Which Defendant Seeks Partial Summary Judgment**

10          *1.      Issue 1: Plaintiffs' Claim Under ERISA's Catch-All Provision, Section*

11              *502(a)(3)*

12      Sun Life seeks partial summary judgment on its Issue 1, stating: "Plaintiffs' first claim for

13  relief, for enforcement of Terms of ERISA Plan Pursuant to ERISA § 502(a)(3)(B)(ii), has no

14  merit as a matter of law because the Employee Retirement Income Security Act of 1974

15  ("ERISA") does not govern the Policy and does not apply to the Claim." Def.'s Mot., ECF 33 at 1.

16  In support of this motion, Sun Life makes three arguments: that Plaintiffs' claim fails to satisfy the

17  elements of a § 502(a)(3) claim; that Sun Life is not a proper party to this claim because it is not a

18  fiduciary; and that the claim is no more than a request for the Court to issue an advisory opinion

19  with no pending case or controversy. Def.'s Br. at 17-18.

20      Plaintiffs counter that § 502(a)(3) limits who can *initiate* such an action, but does not

21  address who can be sued as a defendant. Plaintiffs further argue that its declaratory relief action is

22  proper because there is a substantial controversy between the parties. Pls.' Opp. at 17-20.

23      Plaintiffs' first cause of action asks the Court to issue a declaratory judgment, pursuant to

24  ERISA Section 502(a)(3), stating that Defendant "possessed and possesses no power to determine

25  eligibility for benefits for Plan participants," that the Plan administrator properly exercised its

26  discretion to determine that Participant X was eligible to receive benefits under the Plan, and that

27  all expenses paid on behalf of Participant X's dependents were "properly paid expenses of the

28  Plan." Compl. ¶¶ 41(a)-(c). The Court agrees with Defendant's contention that Plaintiffs' request

United States District Court
Northern District of California

18

1    would amount to the Court issuing an advisory opinion where no case or controversy exists.

2       ERISA Section 502(a)(3) provides that a civil action may be brought under ERISA:

3           [B]y a participant, beneficiary, or fiduciary (A) to enjoin any act or
            practice which violates any provision of [ERISA Title I] or the terms
4           of the Plan, or (B) to obtain other appropriate equitable relief (i) to
            redress such violations or (ii) to enforce any provisions of this title
5           or the terms of the plan.

6    *Harris Trust & Sav. Bank v. Salon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (citing 29 U.S.C.

7    § 1132(a)(3). The language of this statute only authorizes "appropriate equitable relief for the

8    purpose of redressing any violations of . . . enforcing any provisions of ERISA or an ERISA plan."

9    *Peacock v. Thomas*, 516. U.S. 349, 353 (1996). It is designed as a "catch-all provision that acts as

10   a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does

11   not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

12      To satisfy the Constitution's "case-or-controversy" requirement, a plaintiff needs to show:

13          (1) [It] has suffered an 'injury in fact' that is (a) concrete and
            particularized and (b) actual or imminent, nor conjectural or
14          hypothetical; (2) the injury is fairly traceable to the challenged
            action of the defendant; and (3) it is likely, as opposed to merely
15          speculative, that the injury will be redressed by a favorable decision.

16

17   *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. Inc.*, 528 U.S. 167, 180-81 (2000).

18      Plaintiffs have not shown any injury under ERISA that is traceable to Defendant's actions

19   in denying reimbursement under the stop-loss policy. Though Plaintiffs argue that this action

20   "involves a substantial controversy between parties having adverse legal interests," Pl.'s Opp. to

21   Def.'s Mot. at 19 (citing *MedImmune v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), Plaintiffs are

22   essentially asking the Court to provide them legal advice as to whether payouts made on behalf of

23   employees such as Participant X comply with the terms of the Plan. Plaintiffs concede as much in

24   their Opposition, stating "Plaintiffs are not seeking a determination of whether [Defendant]

25   breached the Stop-Loss Policy, but are *requesting that the Court make a declaration regarding

26   coverage to participants under the Plan.*" Pl.'s Opp., ECF 48 at 20 (emphasis added). Plaintiffs'

27   own statements underscore why any alleged injury is conjectural or hypothetical, rather than actual

28   or imminent. Issuing such a declaratory judgment regarding the ways in which the Trust should

United States District Court
Northern District of California

19

1   make coverage decisions under the Plan would be to render an unconstitutional advisory opinion.

2   *See, e.g.*, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998) (noting that

3   advisory opinions have been disapproved of "from the beginning" of our constitutional system).

4         Having thus determined that this claim cannot stand, Defendant's other arguments need not

5   be addressed. The Court GRANTS Defendant's Motion for Partial Summary Judgment as to Issue

6   1, and finds that Plaintiffs' first cause of action, under Section 502(c)(3) of ERISA, does not

7   implicate a case or controversy such that the Court has the constitutional authority to give

8   Plaintiffs the declaratory relief they so request.

9         2.    *Issue 3: Plaintiffs' Breach of the Covenant of Good Faith and Fair Dealing*

10               *Claim*

11        Next, Sun Life seeks partial summary judgment as to Plaintiffs' third claim for relief,

12   which it labels as Issue 3:

13               Plaintiffs' third claim for relief, breach of the covenant of Good
               Faith and Fair Dealing, has no merit as a matter of law because Sun
14               Life's determination that the benefits were not owed under the
               Policy for the Claim was correct. In addition, even if the Court
15               concludes that benefits are payable for the Claim, plaintiffs' bad
               faith claim still lacks merit as a matter of law because there is a
16               genuine legal dispute over the existence of coverage under the
               Policy for the Claim.
17

18   Def.'s Mot., ECF 33 at 2.

19        In support of its motion, Sun Life argues that under the genuine dispute doctrine it had the

20   right to present its side of the legal dispute without extra-contractual exposure. Sun Life submits

21   that there was a genuine dispute as to whether Participant X was prohibited from being lawfully

22   employed, having obtained his employment by "fraudulent submission of an invalid SSN." Def.'s

23   Br. at 20. Sun Life further argues that it was entitled to rely on the *Garcia* case, and thus that such

24   a legal dispute between the parties precludes its liability for bad faith. *See id.* at 21.

25        In response, the Trust argues that there is a triable issue as to whether Sun Life conducted a

26   thorough investigation before it denied benefits. Plaintiffs submit evidence that in response to Sun

27   Life's denial of its claims it supplied Sun Life with additional evidence of lawful employment,

28   including two unique identifying numbers for Participant X and a copy of his Permanent Resident

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Card. *See* Rollinson Decl. Exhs. H, P. The Trust further submits evidence that Sun Life refused to

2  meet with Participant X and failed to confirm through DHS or INS the response from the SSA,

3  which stated that the SSN did not belong to Participant X. *See id.* Exh. S at 3, 5.

4        In insurance coverage disputes under California law, "where there is a genuine issue as to

5  the insurer's liability under the policy for the claim asserted by the insured, there can be no bad

6  faith liability imposed on the insurer for advancing its side of that dispute." *Chateau Chamberay*

7  *Homeowners Assn. v. Assoc. Int'l*, 90 Cal. App. 4th 335, 347 (2001); *see also Wilson v. 21st*

8  *Century Ins. Co*, 42 Cal. 4th 713, 723 (2007); *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d

9  653, 656 (9th Cir. 1994) (holding that an insurer cannot, as a matter of California law, deny

10  coverage in bad faith when the insurer investigated the insured's claim and based its denial of

11  coverage on a "reasonable construction of its policy"). An insurer is not entitled to summary

12  judgment under the genuine dispute doctrine if, viewing the facts in the light most favorable to the

13  insured, "a jury could conclude that the insurer acted unreasonably." *Wilson*, 42 Cal. 4th 713, 724

14  (citing *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161-62 (9th Cir. 2002)).

15        Based on the evidence submitted by the parties, the Court cannot find at this juncture that

16  Sun Life is entitled to judgment as a matter of law. In regard to the legal issue involved in the

17  coverage question, the Court cannot say as a matter of law that Sun Life acted reasonably in

18  basing its decision solely on the ruling in *Garcia v. American United Life Insurance Co.*, 2009 WL

19  6327459 (E.D. Tex. Dec. 9, 2009), *report and recommendation adopted by* 2010 WL 1379106

20  (E.D. Tex. Mar. 31, 2010), *aff'd* 422 Fed. App'x 306 (5th Cir. 2011). Not only is this case not

21  binding on courts in the Ninth Circuit, it is not even binding on courts in the Fifth Circuit. When

22  the Fifth Circuit affirmed the lower court on the grounds that plaintiff had submitted fraudulent

23  documents to the insurance company, thus supporting rescission of the insurance contract, it stated

24  that its decision was to be unpublished and that it "is not precedent except under the limited

25  circumstances set forth in 5TH CIR. R. 47.5.4."[9] 422 Fed. App'x 306, 307 n.* (5th Cir. 2011).

26

27  _____

[9] These exceptions, which include use of the unpublished opinion for the purposes of "res judicata,
collateral estoppel or law of the case," are not applicable here. *See* 5th Cir. R. 47.5.4, *available at*

28  *www.ca5.uscourts.gov/clerk/docs/5thcir-iop.pdf* (accessed Oct. 24, 2014).

1    Additionally, Sun Life exclusively relies on the case despite the fact that *Garcia* does not interpret,

2    or even reference, California law, the law that governs the insurance contract at issue between

3    these two parties. *See* Compl., Exh. A at 1 ("This Policy is delivered in California and is subject to

4    the laws of that jurisdiction.").

5          Further, the Court finds that there are triable issues of fact as to whether Sun Life

6    conducted a thorough investigation. First, although it is undisputed that the SSN provided by

7    Participant X does not belong to him, there is no evidence that his initial submission to his

8    employer was fraudulent. Second, Sun Life apparently did not investigate the other indicia of

9    lawful employment provided by the Trust, such as Participant X's Permanent Resident Care, *see*

10   Rollinson Aff. Exh. H, and other unique identifying numbers for Participant X provided to it by

11   the Trust. *Id.* Exh. P. Third, Sun Life refused the Trust's request that it meet with Participant X or

12   contact DHS or INS to confirm his immigration status. *Id.* Exh. S. at 3, 5.

13         Based on the foregoing, the Court finds that Sun Life is not entitled to judgment as a

14   matter of law on Issue 3 because, viewing the facts in the light most favorable to the Trust, a jury

15   could conclude that Sun Life acted unreasonably when it denied the Trust's reimbursement

16   requests. The Court DENIES Defendant's Motion for Partial Summary Judgment as to Issue 3.

17         *3.      Issue 4: Plaintiffs' Claim for Violation of § 17200 of the California*

18                  *Business and Professions Code*

19         Defendant seeks partial summary judgment as to Plaintiffs' fourth cause of action, which it

20   identifies as Issue 4, for violations of the California Business and Professions Code § 17200,

21   because it contends Plaintiffs claim has no merit for three reasons:

22                  First, Sun Life's decision to deny plaintiffs' claim for benefits under
                    the Policy was correct as no benefits are owed under the Policy
23                  based on the Claim. . . . Second, even if the Court determines that
                    benefits are owed under the Policy for the claim, it was not a
24                  violation of [§ 17200] to deny the Claim because there is a genuine
                    legal dispute over the existence of coverage under the Policy for the
25                  Claim.    Third, plaintiffs' claim for relief under [§ 17200] fails as a
                    matter of law because plaintiffs cannot recover contract damages
26                  under [§ 17200] and are not entitled to injunctive relief because they
                    have no standing.
27

28   Def.'s Mot., ECF 33 at 2.

1    The remedies under § 17200 are limited to equitable relief, including injunctive relief, and

2    the restoration to "any person in interest of any money or property which may have been acquired

3    by means of such unfair competition." Bus. & Prof. Code § 17203. California courts have held

4    repeatedly that a claim under § 17200 is "not an all-purpose substitute for a tort or contract

5    action," and that "[d]amages are not available under section 17203." *Cortez v. Purolator Air*

6    *Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000); *see also Korea Supply Co. v. Lockheed Martin*

7    *Corp.*, 29 Cal. 4th 1134, 1150 (2003) ("We reaffirm that an action under the UCL [§ 17200] is not

8    an all-purpose substitute for a tort or contract action.").

9    Plaintiffs cite *Yanting Zhang v. Superior Court*, 57 Cal. 4th 364 (2013), for the principle

10   that this Court can, under § 17200, fashion a broad equitable remedy as it sees fit, and "may make

11   such orders or judgments as necessary to prevent the use or employment of any practice which

12   constitutes unfair competition." *Yanting Zhang*, 57 Cal. 4th 364, 371. Plaintiffs, however, read

13   *Yanting Zhang* far too broadly as the California Supreme Court makes clear in its ruling that the

14   purpose of § 17200 is "to provide a streamlined procedure for the prevention of *ongoing or*

15   *threatened acts* of unfair competition." *Id.* (emphasis added).

16   The parties do not dispute that the Policy is no longer in effect, and that the Trust no longer

17   maintains stop-loss insurance coverage with Defendant. *See, e.g.*, Rollinson Aff. ¶ 20. Plaintiffs

18   point to no "ongoing or threatened" actions by Defendant that would implicate unfair competition.

19   Plaintiffs lack the necessary standing to bring suit under § 17200 without evidence of a real or

20   immediate threat of irreparable injury. *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d

21   998, 1021-22 (9th Cir. 2004) ("Article III standing requires an injury that is actual or imminent . . .

22   In the context of injunctive relief, the plaintiff must demonstrate a *real or immediate threat* of an

23   irreparable injury. Hangarter currently has no contractual relationship with Defendants and

24   therefore is not personally threatened by their conduct.") (emphasis in original).

25   Much like in *Hangarter*, Plaintiffs here show no evidence of an actual or imminent injury;

26   rather, they show evidence of a past injury from which they seek redress. At bottom, this is a

27   contract dispute. Section 17200 is not an appropriate vehicle by which to bring these claims, and

28   the Plaintiffs lack the requisite standing under Article III to do so. *See, e.g.*, *Lee v. Am. Nat'l Ins.*

United States District Court
Northern District of California

1    *Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001). As such, the Court GRANTS Defendant's Motion for

2    Partial Summary Judgment as to Plaintiffs' fourth cause of action for violations of § 17200.

3              4.        *Issue 5: Plaintiffs' Prayer for Punitive Damages*

4              Defendant finally seeks partial summary judgment as to Issue 5, that Plaintiffs' claim for

5    punitive damages fails as a matter of law, as there is no evidence of malice, oppression, or fraud

6    because "there is no clear and convincing evidence of malice, oppression or fraud . . . [and there]

7    is a genuine legal dispute over the existence of coverage under the Policy for the Claim." Def.'s

8    Mot., ECF 33 at 2. Defendant further contends that Plaintiffs "do not oppose Sun Life's motion for

9    summary judgment on their claim for punitive damages." Def.'s Reply, ECF 57 at 15.

10            Defendant is correct that nowhere in Plaintiffs' briefing do they explicitly discuss the

11   prayer for relief regarding punitive damages, though they do oppose Defendant's argument that

12   the genuine dispute doctrine applies to insulate Defendant from extra-contractual claims. As stated

13   above, the Court has found that the evidence submitted in support of the genuine dispute doctrine

14   is disputed, and that a jury could find that Defendant acted unreasonably when it denied

15   reimbursement to the Trust for Participant X's twins' medical expenses. Thus, the Court turns to

16   whether a reasonable jury could award Plaintiffs punitive damages under their claim for breach of

17   the covenant of good faith and fair dealing.

18            Under California law, a party may be awarded punitive damages only where "there is some

19   evidence of fraud, malice, express or implied, or oppression." *Spinks v. Equity Residential*

20   *Briarwood Apartments*, 171 Cal. App. 4th 1004, 1052 (2009). Under Civil Code § 3294, which

21   authorizes the award of punitive damages in certain instances, "oppression, fraud, or malice must

22   be proven by 'clear and convincing' evidence." *Am. Airlines, Inc. v. Sheppard, Mullin, Richter &*

23   *Hampton*, 96 Cal. App. 4th 1017, 1050 (2002). "In the usual case, the question of whether the

24   defendant's conduct will support an award of punitive damages is for the trier of fact, since the

25   degree of punishment depends on the peculiar circumstances of each case." *Spinks*, 171 Cal. App.

26   4th 1004, 1053 (citing *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981)).  Punitive

27   damages are available for breach of the covenant of good faith and fair dealing in cases dealing

28   with insurance policies, "because of the special relationship between the insurer and the insured."

United States District Court
Northern District of California

1 | *Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 937 (2004).

2 | The Court finds no good reason to diverge from the general principle that punitive

3 | damages awards are a question for the trier of fact. As stated above, a reasonable jury could find

4 | that Defendant failed to reimburse the Trust in good faith, and breached the covenant of good faith

5 | and fair dealing. Since Plaintiffs' claim for breach of the covenant of good faith and fair dealing

6 | survives summary judgment, which in the insurance context permits a jury to award punitive

7 | damages, the Court finds that a reasonable jury could award punitive damages, and DENIES

8 | Defendant's Motion for Partial Summary Judgment as to Issue 5.

9 | **IV.  ORDER**

10 | For the foregoing reasons, IT IS HEREBY ORDERED that:

11 | 1.  Defendant's Motion for Summary Judgment is DENIED.

12 | 2.  Defendant's Motion for Partial Summary Judgment as to Issues 1 and 4 are

13 | GRANTED.

14 | 3.  Defendant's Motion for Partial Summary Judgment as to Issues 2, 3, and 5 are

15 | DENIED.

16 | 4.  Plaintiffs' Motion for Partial Summary Judgment as to its second cause of action

17 | for breach of contract is GRANTED.

18 | **IT IS SO ORDERED.**

19 | Dated: November 6, 2014

20 | 
21 | BETH LABSON FREEMAN
United States District Judge

*United States District Court*
*Northern District of California*